[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11420
_____

D.C. Docket No. 3:15-cv-01106-TJC-PDB

RANDOLPH SELLERS,
individually and on behalf of a class of persons similarly situated,
TABETHA SELLERS,
individually and on behalf of a class of persons similarly situated,

Plaintiffs - Appellants,

versus

RUSHMORE LOAN MANAGEMENT SERVICES, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 29, 2019)

Before WILSON, JILL PRYOR, and THAPAR,* Circuit Judges.

JILL PRYOR, Circuit Judge:

After Randolph and Tabetha Sellers filed for Chapter 7 bankruptcy, the bankruptcy court issued a discharge order, which relieved them from personal liability on their discharged debts and generally barred creditors from taking actions to collect those debts.  Despite the discharge order, Rushmore Loan Management Services, LLC, the servicer for the Sellerses' home mortgage, sent them monthly statements for their mortgage.

Because Rushmore sent statements after the discharge order was entered, the Sellerses sued Rushmore seeking class certification on claims arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.* The Sellerses alleged that Rushmore made false, deceptive, and misleading representations when it sent mortgage statements and attempted to collect on their mortgage debt after they received a Chapter 7 discharge.  The district court denied class certification, concluding that for each claim individualized inquiries predominated over issues common to the proposed class.  In reaching this conclusion, the district court relied, at least in part, on its determination that the

---

* Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

question of "whether the Bankruptcy Code precluded and/or preempted the FDCPA and FCCPA" presented an individualized rather than a common issue. Doc. 62 at 9.[1]

The Sellerses appeal the district court's denial of class certification. After careful review and with the benefit of oral argument, we conclude that the district court abused its discretion when it determined that Rushmore's preclusion/ preemption defense raised an individualized issue. We vacate and remand so that the district court may consider again the Sellerses' class certification motion in light of our conclusion that this question is common to all class members.

## I.     FACTUAL BACKGROUND

The Sellerses obtained a loan secured by a mortgage lien on their home in Keystone Heights, Florida. When they defaulted on the loan, the holder of the mortgage filed a foreclosure action. While the foreclosure action was pending, the Sellerses moved out of the home.

After moving out, the Sellerses filed for Chapter 7 bankruptcy, which triggered a stay of the foreclosure action. In the bankruptcy proceeding, the Sellers did not reaffirm the mortgage debt. The bankruptcy court entered a discharge order, which functioned as an injunction that generally prohibited the Sellerses' creditors from taking any steps to collect the discharged debts. *See* 11 U.S.C.

---

[1] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

§ 524(a)(2) (stating that the discharge order "operates as an injunction against . . . an act[] to collect, recover or offset any such debt as a personal liability of the debtor"). With respect to the mortgage debt, the discharge order released the Sellerses from personal liability on the mortgage, but the mortgage holder continued to have a lien against the property. *See Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). If the Sellerses had remained in their home, the Bankruptcy Code would have allowed the mortgage holder to try to collect on the mortgage so long as its actions were limited to "seeking or obtaining periodic payments" in lieu of foreclosing on the home. *See* 11 U.S.C. § 524(j).

About two years after the discharge order was entered, Rushmore took over servicing the Sellerses' loan. Despite the discharge, Rushmore sent the Sellerses monthly mortgage statements that appeared to seek payment on the mortgage debt. For a period of eight months, Rushmore sent the Sellerses monthly statements in the form of "Mortgage Statement I."[2] In the top right corner of these statements was a box listing the "Payment Due Date" and "Amount Due" along with a notice that if payment was received after a certain date, a late fee would be charged. Doc. 28-1 at 19. The "Amount Due" was listed as more than $70,000, and it increased with each monthly statement. Directly below that box was a disclaimer:

---

[2] A copy of the first page of Mortgage Statement I is appended to this opinion as Exhibit A.

4

This communication is from a debt collector and any information received will be used for that purpose. This does not imply that Rushmore Loan Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes.

*Id.* Below the disclaimer was an "Explanation of Amount Due," which itemized the principal, interest, escrow, monthly payment due, total fees and charges, and overdue payments on the loan. The first page also warned that **"IF YOU ARE** [sic] **FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current." *Id.* The bottom of the first page included a detachable payment coupon that listed a "Due Date," an "Amount Due," a "Late P[a]ym[en]t Amount," and instructions to make checks payable to Rushmore. *Id.* In addition, Rushmore included with Mortgage Statement I an envelope for the Sellerses to use to remit their payment.

Eventually, Rushmore revised its form mortgage statement. For a period of seven months, Rushmore sent the Sellerses monthly statements in the form of "Mortgage Statement II."[3] These statements were in many ways similar to the Mortgage Statement I form. First, the top of these statements remained the same with a box listing the "Payment Due Date" and "Amount Due" along with a notice that if payment was received after a certain date, a late fee would be charged. Doc.

---

[3] A copy of the relevant pages of Mortgage Statement II is appended to this opinion as Exhibit B.

5

33-9 at 2.  Second, the statements continued to include the same disclaimer and "Explanation of Amount Due" information as the earlier statements.  *Id.*  Third, the statements included the same warning to borrowers "**IN FORECLOSURE OR BANKRUPTCY"** that "the amount listed here may not be the full amount necessary to bring your account current."  *Id.*

But Rushmore did make some changes to the format of Mortgage Statement II.  The statements no longer included a payment coupon.  In place of the payment coupon, Rushmore printed this disclaimer:

> This is an Informational Statement for borrowers in bankruptcy or borrowers whose debt has been discharged in bankruptcy.  It is not an attempt to collect a debt.  Please note that even if your debt has been discharged in bankruptcy and you are no longer personally liable on the debt, the lender may, in accordance with applicable law, pursue its rights to foreclose on the property securing the debt.  If you do not wish to receive informational statements in the future, please call Rushmore toll-free at (888) 504-6700.

*Id.*  And Rushmore added an additional disclaimer to the end of the statement, at the bottom of the fifth page:

> Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt.  Any information obtained will be used for that purpose.  However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

*Id.* at 6.

6

During the period when the Sellerses were receiving statements in the form of Mortgage Statement I, the state court entered a final judgment of foreclosure on the Keystone Heights home.  The property then was sold at a foreclosure sale. After the final judgment of foreclosure was entered, for a period of ten months, Rushmore continued to send monthly mortgage statements in the form of Mortgage Statement I or Mortgage Statement II.

## II.    PROCEDURAL HISTORY

After receiving the mortgage statements, the Sellerses filed a putative class action against Rushmore in federal district court, bringing FDCPA and FCCPA claims.  First, the Sellerses alleged that Rushmore violated the FDCPA by sending monthly mortgage statements that "attempted to collect a debt and represented that it had a legal right to collect upon discharged monetary amounts."  Doc. 1 at ¶ 46. The Sellerses alleged that this conduct violated the FDCPA, which prohibits the use of "false, deceptive, or misleading representation[s]" including by making false representations about "the character, amount, or legal status of [a] debt." 15 U.S.C. § 1692e(2)(A).  According to the Sellerses, when Rushmore took the action of sending the monthly statements, it falsely represented that it had a legal right to collect the mortgage debt from the Sellerses and also falsely represented the legal status of the debt.

Second, the Sellerses alleged that Rushmore's conduct violated the FCCPA. By sending the mortgage statements, the Sellerses alleged, Rushmore had "claim[ed] and attempt[ed] to enforce a debt which was not legitimate and not due and owing." Doc. 1 at ¶ 66. As with the FDCPA claim, the Sellerses' contention that the debt could not be enforced was based on their allegation that any amounts they owed on the mortgage "had been discharged by bankruptcy proceedings and were no longer due and owing." *Id.* at ¶ 63.

For each claim, the Sellerses sought to represent a class of similarly situated Florida consumers to whom Rushmore sent mortgage statements in the forms of Mortgage Statement I or Mortgage Statement II. The Sellerses alleged that the class members were entitled to actual damages, statutory damages, punitive damages, and attorney's fees for these violations. The Sellerses also sought a declaration that Rushmore's conduct was unlawful, an injunction prohibiting Rushmore from sending documents requesting payment on discharged debts, and an order requiring Rushmore to "disgorge all ill-gotten gains" under the Declaratory Judgment Act, 28 U.S.C. § 2201.[4] Doc. 1 at ¶ 106.

---

[4] The Sellerses brought a separate FCCPA claim based on Rushmore's act of sending them a form requesting their taxpayer identification numbers. Because the district court granted summary judgment to Rushmore on this claim, it is not before us in this appeal where our review is limited to the denial of class certification.

In its answer, Rushmore denied liability and asserted that the claims should be not addressed in a class action.  Rushmore raised a number of affirmative defenses, including that the FDCPA and FCCPA claims were "displaced and/or precluded by the Bankruptcy Code."  Doc. 12 at 29.

Rushmore moved for summary judgment.  It argued that it was entitled to summary judgment because it was not attempting to collect a debt when it sent the monthly mortgage statements.  To establish liability under the FDCPA and FCCPA, the Sellerses had to establish that Rushmore sent the statements in connection with collecting a debt.  *See* 15 U.S.C. § 1692e  (prohibiting a debt collector from making "false, deceptive, or misleading representations . . . in connection with the collection of any debt"); Fla. Stat. § 559.72(9) (prohibiting an "attempt . . . to enforce a debt when [the debt collector] knows that the debt is not legitimate").  Rushmore argued that the disclaimers in Mortgage Statement I and Mortgage Statement II made clear that it was not trying to collect payments from borrowers who had received bankruptcy discharges but was merely sending them the statements for informational purposes.  In addition, Rushmore contended that it was not liable under the FDCPA or the FCCPA because the Sellerses' claims were "precluded and preempted by the Bankruptcy Code."  Doc. 33 at 13.

The district court denied Rushmore's summary judgment motion.  The court determined that there were disputed issues of material fact as to whether Rushmore

9

was attempting to collect a debt when it sent the mortgage statements. The court then considered whether the Bankruptcy Code precluded and preempted the FDCPA and FCCPA claims. The court determined that these defenses would apply only if the exception to the discharge injunction in § 524(j) of the Bankruptcy Code applied. Because the Sellerses had not remained in their home and were not claiming that Rushmore had violated § 524(j), the court concluded that it need not decide whether the Bankruptcy Code precluded or preempted the FDCPA or FCCPA.

The Sellerses moved for class certification. They asked the district court to certify the following class:

> All Florida consumers who (1) have or had a residential mortgage loan serviced by Rushmore Loan Management Services, LLC, which Rushmore obtained when the loan was in default; (2) received a Chapter 7 discharge of their personal liability on the mortgage debt; and (3) were sent a mortgage statement dated September 11, 2013 or later, in substantially the same form as Mortgage Statement I and/or Mortgage Statement II, and was mailed to the debtor's home address in connection with the discharged mortgage debt.

Doc. 58 at 6 (footnotes omitted).

Rushmore opposed the Sellerses' motion, arguing that a class should not be certified for several reasons. Rushmore argued that class certification was inappropriate because the class included both borrowers who vacated their homes and borrowers who remained in their homes. Because the Bankruptcy Code set forth different standards governing the communications a mortgage holder could

10

have with each group, *compare* 11 U.S.C. § 524(a), *with id.* § 524(j), Rushmore claimed the court would need to conduct "an individualized review of the Bankruptcy Code's application to [each] borrower." Doc. 61 at 20. Rushmore also argued that the court would need to decide whether the Bankruptcy Code precluded or preempted the FDCPA and FCCPA claims for class members who remained in their homes but, based on the summary judgment ruling, would not need to analyze these defenses for class members who vacated their homes.

The district court denied the motion for class certification because it concluded that the predominance requirement of Federal Rule of Civil Procedure Rule 23(b)(3) was not satisfied. The court reasoned that because the class included borrowers who, like the Sellerses, vacated their homes, as well as borrowers who remained in their homes, certifying the proposed class would require individualized inquiries "for every class member to determine whether the § 524(j) exception applied, and if so, whether the Bankruptcy Code precluded and/or preempted the FDCPA and FCCPA." Doc. 62 at 8-9. Just as it did in its summary judgment order, the district court considered the preclusion/preemption defense to be relevant only for class members who remained in their homes, meaning that § 524(j) dictated how and when Rushmore could contact them.

11

After the district court denied class certification, the Sellerses received permission from this Court to bring an interlocutory appeal of the order denying class certification. *See* Fed. R. Civ. P. 23(f).

## III.    STANDARD OF REVIEW

We review a district court's ruling on class certification for abuse of discretion. *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003). "We will only find an abuse of discretion if the [d]istrict [c]ourt applies the wrong legal standard, follows improper procedures in making its determination, bases its decision on clearly erroneous findings of fact, or applies the law in an unreasonable or incorrect manner." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014). But "[a]s long as the district court's reasoning stays within the parameters of Rule 23's requirements for certification of a class, the district court decision will not be disturbed." *Hines*, 334 F.3d at 1255.

## IV.    LEGAL ANALYSIS

The Sellerses argue that the district court abused its discretion when it denied class certification on the basis that individual issues predominated. At the first step of the predominance analysis, the district court classified various issues as raising common or individualized questions. At the second step, the district court concluded that given the individualized issues in the case, common issues did not

12

predominate. We conclude that the district court abused its discretion because at the first step of the predominance analysis it erroneously classified the question of whether the Bankruptcy Code precluded or preempted the FDCPA and FCCPA claims as raising an individual, rather than common, issue. Given this error, remand is required so that the district court may reassess predominance in light of the classification of this question as raising a common issue.

## A.    A District Court May Certify a Class Under Rule 23(b)(3) Only if Common Questions of Law or Fact Predominate.

Before explaining why the district court abused its discretion in determining that common questions predominate, we briefly review the standard for deciding whether common issues predominate in a class action. A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) (footnote omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

As an initial matter, a plaintiff seeking to represent a proposed class must demonstrate that the class is "adequately defined and clearly ascertainable." *Little*

13

*v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). If the proposed class is adequately defined and clearly ascertainable, the class representative must then satisfy Rule 23(a) by demonstrating (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Id.*; *see* Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Little*, 691 F.3d at 1304.

In addition to meeting these requirements, the plaintiff must show that the proposed class satisfies at least one of the class types under Rule 23(b). *Id.* The Sellerses sought class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). For the commonality requirement, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)

(internal quotation marks omitted). But Rule 23(b)(3) requires us to consider whether "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989) (internal quotation marks omitted).

To determine whether common issues predominate, a district court first must "identify the parties' claims and defenses and their elements" and "then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Id.* (internal quotation marks omitted). The court then must "determine whether the common questions predominate over the individual ones." *Id.* at 1234-35. We have explained that certification is inappropriate when "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims." *Klay*, 382 F.3d at 1255.

**B.      The District Court Abused Its Discretion in Its Class Certification Analysis Regarding the FDCPA Claim.**

We now turn to the primary question on appeal:  whether the district court abused its discretion in deciding that common issues did not predominate for the FDCPA claim.  In the predominance inquiry, the district court identified several questions that raised individualized issues, including:  (1) "whether the § 524(j) exception applied," and (2) if it did, "whether the Bankruptcy Code precluded and/or preempted the FDCPA."  Doc. 62 at 9.  The district court then concluded that common questions did not predominate.  But the district court erred in treating the question of "whether the Bankruptcy Code precluded and/or preempted the FDCPA" as an individualized question that was relevant only to class members who remained in their homes.  Because Rushmore's defense potentially barred every class member's FDCPA claim, the district court was required to treat the defense as raising a common issue.

To understand why the defense raised a question common to all class members, we must begin by considering how the Bankruptcy Code relates to the FDCPA claim.  The FDCPA bars a debt collector from making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt," which includes making a false representation about "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  The Sellerses alleged that, for each class member, Rushmore engaged in false or deceptive conduct when it

16

tried to collect a mortgage debt that had been discharged.  Under the Sellerses'

theory, the monthly mortgage statements Rushmore sent to each class member

contained false statements because in each statement Rushmore asserted that the

class member was personally liable for a debt that the bankruptcy court's discharge

injunction prohibited Rushmore from collecting.  *See Randolph v. IMBS, Inc.*,

368 F.3d 726, 728 (7th Cir. 2004) ("A demand for immediate payment . . . after the

debt's discharge[] is 'false' in the sense that it asserts that money is due, although,

because of . . . the discharge injunction (11 U.S.C. § 524), it is not.").

Throughout the case, Rushmore has argued that it could not be liable

because the class's FDCPA claims were "displaced and/or precluded by the

Bankruptcy Code."  Doc. 12 at 29.  We understand Rushmore to be arguing that

the Bankruptcy Code provides the only remedy for a claim that a creditor violated

a bankruptcy court's discharge injunction and thus bars an FDCPA claim resting

on the creditor's attempt to collect a debt in violation of a bankruptcy court's

discharge injunction.[5]  More specifically, Rushmore argued that a debtor's only

---

[5] Rushmore has not been very precise in explaining the basis for its preclusion/preemption defense.  We construe Rushmore's argument as we do because in raising the defense, Rushmore relied on *Prindle v. Carrington Mortgage Services, LLC*, No. 3:13-cv-1349, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016).  In *Prindle*, a debtor sued her mortgage servicer for violating the FDCPA and FCCPA because it sent statements and took actions to collect her mortgage debt after she received a Chapter 7 discharge.  The district court in *Prindle* acknowledged that there was a potential preclusion issue if the plaintiff's claims were premised on a violation of the discharge injunction.  *See* Transcript at 8-9, *Prindle*, No. 3:13-cv-1349.  Based on its reliance on *Prindle*, we understand Rushmore's argument about preclusion and preemption to be that even if Rushmore engaged in false or deceptive conduct by sending

17

recourse was to reopen his bankruptcy proceedings and ask the bankruptcy court to hold the creditor in civil contempt for violating the discharge injunction. *See In re McLean*, 794 F.3d 1313, 1318-19 (11th Cir. 2015) (recognizing that bankruptcy court had authority to hold creditor in contempt for violating discharge injunction).[6]

The district court concluded that Rushmore's preclusion and/or preemption defense raised an individualized issue because it applied only to those class members who stayed in their homes post-bankruptcy. We disagree. The district court erred because the legal question of whether the Bankruptcy Code precludes or displaces any remedy available under the FDCPA and FCCPA for a claim that a creditor engaged in false or deceptive conduct by trying to collect a debt in violation of a discharge injunction is common to all class members.

---

monthly mortgage statements in violation of a bankruptcy court's discharge injunction, a class member's only remedy was to bring a contempt action under the Bankruptcy Code.

We acknowledge that Rushmore's preclusion/preemption defense arguably could be construed as raising an argument that it cannot be liable because its conduct was permitted under the Bankruptcy Code, and thus it did not violate any discharge orders when it sent the statements. But the district court treated this as a distinct issue when it identified "whether the § 524(j) exception applied" as a separate question. Doc. 62 at 8-9.

[6] A bankruptcy court could hold Rushmore in contempt for violating the discharge injunction if it determined that (1) Rushmore's communication was prohibited under § 524 and (2) there was "no fair ground of doubt as to whether the [discharge] order barred [its] conduct. *In re Roth*, 935 F.3d 1270, 1276 (11th Cir. 2019). To determine whether a creditor violated § 524 for purposes of contempt proceedings, the bankruptcy court would apply an objective standard, not the FDCPA's "least sophisticated consumer" standard. *Id.* at 1276-77.

In their complaint, the Sellerses alleged that Rushmore sent monthly mortgage statements to collect debts that "had been discharged by bankruptcy proceedings and were no longer due and owing." Doc. 1 at ¶ 45. By representing that it had a "legal right to collect upon discharged monetary amounts," the Sellerses alleged, Rushmore had made "false, deceptive, or misleading representations in connection with the collection of a debt." *Id.* at ¶ 46. The class that the Sellerses identified included members who vacated their homes, for whom § 524(a) defined the scope of the bankruptcy court's discharge injunction, and class members who remained in their homes, for whom § 524(j) defined the scope of the bankruptcy court's discharge injunction. The district court decided that Rushmore's preemption/preclusion defense applied only to class members who remained in their homes. In reaching this decision, the court overlooked the Sellerses' allegations that Rushmore violated discharge injunctions even when it sent form Mortgage Statements I and II to class members who vacated their homes because § 524(a) provides that a bankruptcy court's discharge order operates as an injunction that bars any act to collect a discharged debt as a personal liability of the debtor. *See* 11 U.S.C. § 524(a)(2). Accordingly, Rushmore's argument—that it is not liable under the FDCPA because the only remedy for violation of a discharge injunction is under the Bankruptcy Code—applies to all class members.

Given the district court's error, we must vacate its class certification decision and remand. Our precedent establishes that a district court abuses its discretion when in assessing predominance it improperly categorizes a question as presenting a common or an individual issue. *See Brown*, 817 F.3d at 1235-38. In *Brown*, consumers purchased front-loading washing machines that were designed in a way that caused mildew to grow inside the machine. *Id.* at 1230-31. The consumers brought a putative class action against the manufacturer alleging state law claims for unfair competition based on the manufacturer's failure to disclose the design defect. *Id.* at 1231. The district court certified a class, determining that common questions of law and fact predominated. *Id.* at 1232. We vacated the class certification order on the basis that the district court abused its discretion when it erroneously classified questions as presenting common, rather than individualized, issues. *Id.* at 1236-37. Consistent with *Brown*, we remand so that the district court may decide in the first instance whether, in light of our holding that the preemption/preemption defense raises a common question, common issues predominate.

We caution that we express no opinion today about whether Rushmore's defense is meritorious—that is, whether the Bankruptcy Code actually precludes or displaces any remedy available under the FDCPA and FCCPA. We have not previously addressed this question, which has split the circuits. *Compare Walls v.*

*Wells Fargo Bank, N.A.*, 276 F.3d 502, 511 (9th Cir. 2002) ("Because [the debtor's] remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded."), *with Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 91 (2d Cir. 2016) ("[W]e conclude that the Bankruptcy Code does not broadly repeal the FDCPA for purposes of FDCPA claims based on conduct that would constitute alleged violations of the discharge injunction."), *and Randolph*, 368 F.3d at 732-33 (holding that the Bankruptcy Code "cannot be deemed to have repealed or curtailed [the FDCPA] by implication"). Our decision today is limited to the conclusion that this defense raises questions common to all class members.

We note the existence of a separate issue in this case: whether Rushmore actually violated the discharge injunction when it sent the statements. We cannot say that the district court erred in classifying this question as an individual issue because the district court would have to apply different legal criteria to determine whether Rushmore violated the discharge injunction depending on whether the class member had vacated or remained in her home. If a class member vacated her home, the district court would look to § 524(a) to determine whether Rushmore's act of sending a mortgage statement violated the discharge injunction. But if a class member remained in her home, the district court would look to § 524(j) to

21

answer the same question.[7]  In assessing predominance on remand, the district court will need to consider the Sellerses' contention that even though the legal standards under § 524(a) and 524(j) are different, common questions predominate because the district court would use the exact same evidence—form Mortgage Statement I and form Mortgage Statement II—to determine for each group whether Rushmore violated the discharge injunction.  If the Sellerses are correct, this may suggest that common questions predominate.  *See Klay*, 382 F.3d at 1255 (explaining that if "the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate").[8]

---

[7] In an alternative argument, the Sellerses contend that this question presents a common issue because our prior precedent prohibits a debtor from remaining in her home and making payments in lieu of foreclosure.  *See In re Taylor*, 3 F.3d 1512, 1516 (11th Cir. 1993) (explaining that "[n]othing in the plain language of [the Bankruptcy Code] provides a debtor with an option to retain the property and to continue to make payments").  The Sellerses argue that because under *Taylor* no class member was permitted to remain in her home and make monthly payments, Rushmore could not rely on § 524(j) and seek payments in lieu of foreclosure from any class member. But *Taylor* was decided before Congress amended the Bankruptcy Code to add § 524(j), which expressly contemplates that a debtor could stay in her principal residence and avoid foreclosure by making periodic payments on the mortgage.  *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, tit. II, § 202, 119 Stat. 23, 43 (2005).  Given the addition of § 524(j), we are no longer bound by *Taylor*, at least with respect to property that is a debtor's principal residence.  *See Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 840 (11th Cir. 2003) (recognizing that we are not bound by the prior precedent rule when there is a "clear change in the law by Congress" (internal quotation marks omitted)).

[8] Rushmore urges us to affirm the district court's denial of class certification on the alternative grounds that the typicality and ascertainability requirements for class certification are not satisfied.  But the district court addressed only predominance and did not pass on these other class-certification requirements.  Given the district court's broad discretion in deciding whether to certify a class, the appropriate course is to allow the district court an opportunity to address these issues in the first instance.  *See Smith v. Casey*, 741 F.3d 1236, 1243 n.7 (11th Cir. 2014)

**C.    The District Court Also Abused Its Discretion in Its Class Certification Analysis Regarding the FCCPA Claim.**

We now turn to whether the district court abused its discretion when it denied class certification with respect to the FCCPA claim. To establish that Rushmore violated the FCCPA, the Sellerses must prove that Rushmore attempted to enforce a debt that it knew was not legitimate. *See* Fla. Stat. § 559.72(9). Just as with the FDCPA claim, each class member's FCCPA claim is premised on the allegation that the mortgage debt was not legitimate because the bankruptcy court had discharged the debtor's personal liability. Rushmore raised the same defense that each class member's FCCPA claim was preempted or precluded by the Bankruptcy Code. For the same reasons we discussed in the previous section, we conclude that the district court abused its discretion in categorizing this defense as raising an individualized, as opposed to common, issue. We likewise vacate the district court's order denying class certification on the FCCPA claim.

On remand, the district court may consider whether any other elements or defenses related to the FCCPA claim raise individualized questions, including whether Rushmore had actual knowledge that the debts were not legitimate. *See* Fla. Stat. § 559.72(9). "In contrast to the FDCPA, Section 559.72(9) of the

("With respect to a decision we would review only for an abuse of discretion, we generally decline to substitute our judgment about the matter when the district court has not yet decided it and leave the decision for the district court to make in the first instance.").

FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010). If the district court concludes that the question of actual knowledge requires an individualized inquiry,[9] this conclusion may factor into its analysis of whether common questions predominate.

## V.    CONCLUSION

We vacate the district court's order denying class certification so that the district court may reconsider whether common questions of law or fact predominate given that the question of whether the "Bankruptcy Code precluded and/or preempted the FDCPA and FCCPA" raises a common, rather than an individualized, legal issue.

**VACATED AND REMANDED.**

---

[9] We do not mean to suggest that the district court on remand must conclude that this question presents an individualized inquiry. *See Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-cv-690, 2018 WL 1701963, at *13 (M.D. Fla. Mar. 9, 2018) (explaining that a consent judgment entered into by loan servicer could establish actual knowledge for all potential class members). But it appears that the Sellerses have not yet identified a mechanism for determining actual knowledge on a classwide basis.

**EXHIBIT A**



**Rushmore Loan Management Services**
PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone (888) 504-6700

Randolph L Sellers
Tabetha L Sellers

FL 32656-8317

**MORTGAGE STATEMENT**
Statement Date: 02/10/2014

| | |
|---|---|
| Account Number | 5812 |
| Payment Due Date | 03/01/2014 |
| **Amount Due**[5] | **$70,846.17** |

If payment is received after 03/16/2014, a $39.82 late fee will be charged.

This communication is from a debt collector and any information received will be used for that purpose. This does not imply that Rushmore Loan Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended soley for informational purposes.

### Account Information

| | |
|---|---|
| Property Address | 6045  OAK LEAF RD<br>KEYSTONE HEIGHTS FL, 32656 |
| Outstanding Principal[3] | $121,008.90 |
| Deferred Balance[2] | $0.00 |
| Interest Rate | 6.000% |
| Recoverable Advances[4] | $1,386.60 |
| Prepayment Penalty | NO |

### Explanation of Amount Due[5]

| | |
|---|---|
| Principal | $183.12 |
| Interest | $551.08 |
| Escrow (for Taxes and Insurance) | $261.39 |
| **Regular Monthly Payment** | **$995.59** |
| Total Fees and Charges | $159.28 |
| Overdue Payment | $69,691.30 |
| **Total Amount Due** | **$70,846.17** |
| Partial Payment (Unapplied)[1] | $0.00 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)[1] | $0.00 | $0.00 |
| Recoverable Advances[4] | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### Important Information

(1) **Partial Payment:** Any partial payment that you make are not applied to your mortgage, but instead are held in a separate suspense account.  If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

(2) **Deferred Balance:**  The amount of your principal balance that is deferred as part of the terms of a loan modification.

(3) **Outstanding principal:**  This is your Loan balance only, not the payoff amount.

(4) **Recoverable Advances:** Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer-funds rather than escrow funds which are recovered from you, the borrower.

(5) **Amount Due:  IF YOU ARE FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current.  To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

### If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.  Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices.  Rushmore is customer-focused, and we treat all of our customers with respect, courtesy and integrity.  We understand the importance of home ownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment.  We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you.  We also encourage you to contact us to discuss any other issues you may be having with your mortgage.  We believe that open and timely communications is a key to our relationship with you.



(Keep upper portion for your records)
Please mail so that your payment reaches us by the due date.

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PYMT AMOUNT |
|---|---|---|---|---|
| 5812 | 03/01/2014 | $70,846.17 | 03/16/2014 | $70,885.99 |

Randolph L Sellers
Tabetha L Sellers

FL  32656

Make checks payable to:

**Rushmore Loan Management Services LLC**
**P.O. Box 514707**
**Los Angeles, CA 90051-4707**

| Amount Due[5] | |
|---|---|
| Due By 03/01/2014: | $70,846.17 |
| $39.82 late fee will be charged after 03/16/2014 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| Total Amount Enclosed | $ |

0051280900030120147600015812000010354100 0106A9273

Rushmore-Sellers 000887

## EXHIBIT B



**Rushmore Loan Management Services**
PO Box 52708
Irvine, CA 92619

Case 3:15-cv-01106-TJC-PDB Document 33-9 Filed 11/09/16 Page 2 of 6 PageID 909

Visit our website at www.rushmorelm.com
Telephone (888) 504-6700

**MORTGAGE STATEMENT**
Statement Date: 12/18/2014

| Account Number | 5812 |
|---|---|
| Payment Due Date | 01/01/2015 |

**Amount Due[5]** **$81,200.27**
If payment is received after 01/17/2015, a $39.82 late fee will be charged.

Randolph L Sellers
Tabetha L Sellers
291

FL 32656-8317

This communication is from a debt collector and any information received will be used for that purpose. This does not imply that Rushmore Loan Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended soley for informational purposes.

### Account Information

| | |
|---|---|
| Property Address | 6045 OAK LEAF RD KEYSTONE HEIGHTS FL, 32656 |
| Outstanding Principal[3] | $121,008.90 |
| Deferred Balance[2] | $0.00 |
| Interest Rate | 6.000% |
| Recoverable Advances[4] | $6,569.35 |
| Prepayment Penalty | NO |

### Explanation of Amount Due[5]

| | |
|---|---|
| Principal | $192.49 |
| Interest | $541.71 |
| Escrow (for Taxes and Insurance) | $261.39 |
| Regular Monthly Payment | $995.59 |
| Total Fees and Charges | $557.48 |
| Overdue Payment | $79,647.20 |
| **Total Amount Due** | **$81,200.27** |
| Partial Payment (Unapplied)[1] | $0.00 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)[1] | $0.00 | $0.00 |
| Recoverable Advances[4] | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### Important Information

(1) Partial Payment: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

(2) Deferred Balance: The amount of your principal balance that is deferred as part of the terms of a loan modification.

(3) Outstanding Principal: This is your Loan balance only, not the payoff amount.

(4) Recoverable Advances: Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer-funds rather than escrow funds which are recovered from you, the borrower.

(5) Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

### If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused, and we treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you.



This is an Informational Statement for borrowers in bankruptcy or borrowers whose debt has been discharged in bankruptcy. It is not an attempt to collect a debt. Please note that even if your debt has been discharged in bankruptcy and you are no longer personally liable on the debt, the lender may, in accordance with applicable law, pursue its rights to foreclose on the property securing the debt. If you do not wish to receive informational statements in the future, please call Rushmore toll-free at (888) 504-6700.

USCA 933

Rushmore-Sellers 000933

## STATE SPECIFIC NOTICES

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/. Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:

Irvin Borenstein
13111 E. Briarwood Ave. Ste #340
Centennial, CO 80112
Phone: 303-309-3839.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request tht telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan.

"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550."

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE REGULATION 419

Rushmore Loan Management Services LLC is registered with the Superintendent of Financial Services for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services LLC with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729
New York Registered Mortgage Loan Servicer 185729

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

USCA 937

**Rushmore-Sellers 000937**

THAPAR, Circuit Judge, concurring:

I join Judge Pryor's thoughtful opinion on the understanding that it decides a narrow issue. The district court held that the proposed class failed Rule 23(b)(3)'s predominance requirement because it reasoned that the preclusion and preemption defenses raised an individual (rather than common) question about the class. But as the majority opinion explains, these defenses could apply to class members who remained in their homes as well as to class members who left their homes. *Cf. Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510–11 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425–26 (6th Cir. 2000). So these defenses *do* raise a common question about the class.

Of course, the parties have thoroughly briefed the predominance question on appeal. So it might seem tempting for us to resolve the broader issue here and now. (Particularly given the many other individual questions apparently raised by the class.) But Rule 23 vests the district court—not this court—with broad discretion over the certification decision. *See Califano v. Yamasaki*, 442 U.S. 682, 703 (1979). And we may not substitute our judgment simply out of a desire to promote judicial economy. *See McKusick v. City of Melbourne*, 96 F.3d 478, 489 n.7 (11th Cir. 1996). Instead, as the majority opinion rightly notes, the district court should have the chance to address the issue in first instance.

28