[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12929

_____

MARC SCHULTZ,
individually and on behalf of all others
similarly situated,

Plaintiff-Appellee,

*versus*

EMORY UNIVERSITY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02002-TWT

_____

Before WILSON, ROSENBAUM, and ABUDU, Circuit Judges.

PER CURIAM:

At the outset of the COVID-19 pandemic, our country was called to live in a "new normal." Leaders across many states issued stay-at-home orders to contain the spread of the virus. Businesses, universities, schools, and places of public accommodation alike closed their doors and, where possible, transitioned their operations online. Emory University proved no exception, and the institution held classes online for the remaining seven weeks of the Spring 2020 semester.

In response, Marc Schultz filed this suit. A father of a now-graduated Emory student, he seeks to certify this putative class action on behalf of all tuition payors under a theory of implied contract. Essentially, Schultz alleges that tuition payors received a lower-valued remote education than an in-person experience for which they bargained. The district court certified this class under Federal Rule of Civil Procedure 23(b)(3), which Emory challenges on appeal.

After careful review and with the benefit of oral argument, we find that the district court's predominance analysis constitutes an abuse of discretion. Accordingly, we vacate and remand.

## I.  Background

Emory University is an institution of higher learning, operating nine academic units with 250 different degree programs and 15,000 students across two campuses.  While tuition and fees for its students vary across units and by degree, Emory historically charged students the same tuition for courses offered both in-person and remotely.  Emory receives payments for tuition and other fees via online ACH payments, third-party services, wire transfers, and occasionally written checks.

Schultz's daughter attended Emory University's undergraduate program in March 2020.  Like many universities, Emory suspended its in-person instruction and transitioned to remote learning after its spring break.  Students attended the remainder of the Spring 2020 semester online.  When students signed up for Fall 2020 classes, they expressly agreed that Emory would not provide full or partial tuition refunds regardless of whether classes were offered in-person or remotely.  Consistent with pre-pandemic re-enrollment rates, more than 90% of non-graduating students returned, including Schultz's daughter.

Schultz filed his initial class-action complaint in June 2020.  After the dismissal of certain claims, Schultz filed his operative amended complaint in June 2021.  For purposes of this appeal, he asserted breach of implied contract.  Essentially, Schultz alleged that Emory breached an agreement with all tuition payors to provide "in-person, on-campus educational services" implied from Emory's "publications, including brochures, advertisements, and

other promotional materials, and [Emory's] usual and customary practice of providing on-campus courses." Schultz moved to certify a proposed class under Federal Rule of Civil Procedure 23(b)(3)'s predominance and superiority theory.

In June 2023, the district court granted Schultz's certification motion. Specifically, it certified the following class for an implied-in-fact contract claim:

> All people paying Emory tuition, in whole or in part, and personally or on behalf of others, for in-person instruction during the Spring 2020 academic term.

The district court found that Schultz carried his Rule 23(a) burden of showing numerosity, commonality, typicality, and adequacy of representation. As for Rule 23(b)(3), the court found that both the predominance and superiority requirements were satisfied—with a catch.

First, the court ruled that common questions predominate. It held that because implied contracts arise from nonverbal conduct, Emory's customary practices may give rise to implied contracts under Georgia law. The court found an implied offer to provide in-person classes, acceptance via tuition payments, and breach for failure to provide in-person instruction common to all class members. While the court paused over whether alleged damages present individualized issues, it explained that those concerns would not prevent a predominance finding—assuming Schultz presents a capable, class-wide model for their calculation. And the court found that, for purposes of class certification, Schultz

provided "an articulable theory of damages that is capable of class wide resolution," *i.e.*, "the difference between what each class member paid and the market value of the education they received."

Turning to superiority, the court expressed significant concern over whether the class is sufficiently manageable under Rule 23(b)(3)(D). Specifically, the court pointed to "unusually difficult" feasibility issues based upon its "serious doubts as to whether ascertaining the putative individual class members, under Schultz's proposed class definition, is a manageable endeavor." Therefore, the court's order did three things: (1) certified the class, as defined above; (2) ordered Schultz to submit a detailed plan for identifying members, notifying the class, and managing the case; and (3) retained discretion to decertify if proven unmanageable.

On July 17, 2023, Schultz filed his required class identification and notification plan. On July 31, Emory filed its response, urging the court to reject the plan and decertify the class. On August 23, the court issued an order treating Emory's response as a motion to decertify, ordering Schultz and Emory to file response and reply briefing, respectively. Then, on September 7, a three-judge panel of this court granted Emory permission to appeal the original class certification under Federal Rule of Civil Procedure 23(f).

At this point, filings proceeded at both the district and appellate levels. Schultz moved to stay the briefing schedule in this appeal while the motion to decertify is pending, which Emory

opposed. Emory then filed a motion to stay the district court proceedings while this appeal is pending, except as to the district court's resolution of the motion to decertify, which Schultz opposed. Subsequently, we denied the stay to delay the appellate briefing schedule,[1] and the district court granted the stay of its proceedings except as to the motion to decertify the class. Nothing has happened at the district court since January 11, 2024, and the motion remains pending. On July 2, we directed the parties to submit supplemental briefing on the propriety of hearing this appeal while the motion to decertify remains. Both parties submitted their briefing on July 16. Simultaneously, Schultz filed a renewed motion to stay further appellate proceedings on similar prudential grounds as his first motion, which Emory opposed. We denied the motion and proceeded to oral argument.

## II. Standard of Review

Class certification orders are reviewed for an abuse of discretion. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."

---

[1] *See* Doc. 26 at 2 ("Appellee's motion to stay the appeal is DENIED without prejudice to renewal if this Court sets the case for oral argument before the district court rules on the defendant's construed motion to de-certify the class."). "Doc." refers to the CM/ECF numbering system as generated by the dockets at the respective courts.

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009) (quotation marks omitted).

### III.   Discussion

A named plaintiff seeking class certification must satisfy a series of requirements. First, they must demonstrate "that their proposed class is adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quotation marks omitted). Then, the plaintiff must satisfy both the requirements of Federal Rule of Civil Procedure 23(a) and those found in one of Rule 23(b)'s subsections. *Cordoba*, 942 F.3d at 1267. This appeal concerns subsection (b)(3), which permits certification where "[1] questions of law or fact common to class members *predominate* over any questions affecting only individual members, and . . . [2] a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Matters pertinent to subsection (b)(3) include "the likely difficulties in managing a class action." *Id.* at 23(b)(3)(D).

Emory contends that the district court abused its discretion in: (1) finding predominance by common evidence that Emory impliedly contracted with all tuition payors to provide in-person education during a pandemic; (2) holding damages measurable on a class-wide basis by a common methodology; and (3) addressing manageability in a subsequent case management plan. Meanwhile, Schultz posits that this appeal is procedurally premature given the pending motion to decertify.

We first address Schultz's challenge to our exercise of judgment over this case.  Then, we turn to Emory's challenges to class certification on appeal.

### A.  Power Over the Case

There is an inherent tension in the concurrent authorities underlying Rule 23's certification procedures.  On the one hand, the district court retains authority to alter or amend a class certification order up and until a final decision on the merits.  Fed. R. Civ. P. 23(c)(1)(C).  On the other, Rule 23(f) provides a permissive interlocutory appeal for grants and denials of certification.  Appellate courts are "given unfettered discretion whether to permit the appeal," including where "the certification decision is tentative."  Advisory Committee's Note to 1998 amendment.  In making this determination, we consider whether our review would result in appellate micro-management, thereby short-circuiting the district court's ability to reconsider its certification.  *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1273–74 (11th Cir. 2000).  At the same time, we are mindful that "a clear background principle" in appellate jurisprudence is that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"  *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)).  The interplay between these authorities means that, in the context of class action claims, Rule 23(f) challenges may proceed on appeal while other merits-based decisions simultaneously continue at the district court, thereby avoiding

23-12929               Opinion of the Court                    9

unnecessary delay and disruption.  *See Microsoft Corp. v. Baker*, 582 U.S. 23, 38 n.9 (2017).

Interlocutory appeals under Rule 23(f) are limited by the plain language of the statute to orders "granting or denying class action certification," and exclude subsequent motions to decertify. *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291–92 (11th Cir. 2007) (internal quotation marks omitted).  Importantly, Rule 23(f)'s 14-day limit is not subject to equitable tolling and "compel[s] rigorous enforcement."  *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 193 (2019).  Rather, revisions to a class certification order may begin a new 14-day period "only when the revision *materially changes* the original order," but not where it merely reaffirms or makes clarifying changes.  *See, e.g.*, *Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 172 (3d Cir. 2023) (emphasis added).

With these principles in mind, we conclude that we may properly proceed to a determination on the district court's class certification decision.  Schultz urges this panel to refrain from exercising judgment in this case, relying primarily on the *Prado-Steiman* principles and citing the district court's pending motion to decertify.  We disagree for several reasons.

First, the *Prado-Steiman* circumstances were properly argued and considered by this court's original decision to grant the Emory's Rule 23(f) petition for review.  *See* Order Granting Appeal, *Emory Univ. v. Schultz*, No. 23-90016 (11th Cir. Sept. 7, 2023), ECF No. 12.  As Schultz acknowledges, once we granted the appeal, there is no jurisdictional bar to our review.   Rather, these

proceedings may occur in tandem, absent the district court's decision to stay its own proceedings pending the appeal. *See Microsoft Corp.*, 582 U.S. at 38 n.9; Fed. R. Civ. P. 23(f). If anything, it is the district court that must exercise restraint and avoid those Rule 23(f) issues on appeal.[2] *See Griggs*, 459 U.S. at 58.

Second, Emory's only opportunity to challenge the class certification order is the present appeal. Were we to dismiss this appeal without prejudice and the district court subsequently denied the pending motion to decertify, Emory could appeal neither the motion to decertify itself, *Jenkins*, 491 F.3d at 1291–92, nor the original order granting certification, *Lambert*, 586 U.S. at 193; Fed. R. App. P. 26(b)(1) (A court of appeals "may not extend the time to file . . . a petition for permission to appeal."). The Third Circuit's decision in *Wolff* is unpersuasive because it demands that the district court "materially alter" the original order; if it chooses not to, then Emory remains without relief. 77 F.4th at 172. We decline to make our decision based upon what the district court may or may not do in the future.

Finally, these proceedings appear to be at an impasse. The record shows that the district court has stayed all but the motion to decertify below and has not issued a ruling on the motion in the

---

[2] *See, e.g.*, *Amaya v. DGS Constr., LLC*, No. TDC-16-3350, 2019 WL 1501584, at *2–3 (D. Md. Jan. 28, 2019) (applying the *Griggs* principles to find no jurisdiction over a motion to modify a class certification order with a pending Rule 23(f) appeal; *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 n.7 (9th Cir. 2003) (noting jurisdictional concerns surrounding similar issues).

ten months since its order. While district courts often continue with merits issues during pending Rule 23(f) appeals, all merits proceedings in this case are presently stayed at the district court. Meanwhile, the pending motion to decertify includes "aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. Four years into this litigation and with a properly granted Rule 23(f) petition, we have both the responsibility and the authority to exercise judgment under the circumstances.

### B.  Class Certification Order

"Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement." *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019). To determine whether common issues predominate, the court must first identify the requisite claims, defenses, and their elements. *Id.* at 1040. Then, the court classifies the issues as either common or individual questions "by predicting how the parties will prove them at trial." *Id.* (quotation marks omitted). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and . . . [on their] entitlement to injunctive and monetary relief." *Cordoba*, 942 F.3d at 1274 (quotation marks and alterations omitted). In contrast, "common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* (quotation marks omitted).

We are mindful that "[a]ll else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (citing *Comcast Corp. v Behrend*, 569 U.S. 27, 33 (2013); *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940)). This means that a "party *seeking* class certification has the burden of proof," and any doubts about meeting this burden counsels that the court "should refuse certification until [it has] been met." *Id.* at 1233–34 (quotation marks omitted).

Our analysis here begins with noting how proof of damages fits into the broader predominance inquiry. Damages are one among many issues—including, most notably, liability—that are part of the predominance question. Thus "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Id.* at 1239 (quotation marks omitted).

In the antitrust context, where individual injury (or "antitrust impact") is an element of the claim, the method of proving damages takes on extra, even dispositive weight in the predominance inquiry. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009); *see also In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("In antitrust class actions, common issues do not predominate if the fact of antitrust violation and the fact of antitrust impact cannot be established through common proof."); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]here fact of damage

cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance."). Hence, in *Comcast Corporation v. Behrend*, an antitrust class action, the Court noted the plaintiff's burden to show "that damages are capable of measurement on a classwide basis" and held that an expert's damages model that did not align with the plaintiff's theory of liability could not carry that burden. 569 U.S. at 34, 37; *see also Brown*, 817 F.3d at 1239 ("The issue in *Comcast* was whether the plaintiffs could use an expert model to prove their damages on a classwide basis, even though the model did not match their theory of liability.").

Outside the antitrust context, while "*Comcast* did not alter the black-letter rule that individual damages do not always defeat predominance," we have found individual issues predominate where their computation either is (1) too complex and factually specific, or (2) accompanied by significant individual questions surrounding liability. *Brown*, 817 F.3d at 1239–40.

Here, we see two errors by the district court. First, it presumed that predominance in this case "requires that damages resulting from the injury be measurable on a class-wide basis through use of a common methodology." Doc. 98 at 22 (quoting *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014). This is not true in all cases; while the individualized or common nature of damages is always "relevant," it is not always decisive, and in such cases should be weighed along with the other common or individualized issues presented. *Brown*, 817 F.3d at 1239.

Second, the district court abused its discretion in its common methodology analysis. It is Schultz's burden to prove that common issues predominate over individualized ones. Insofar as the district court believes a class-wide damages calculation is necessary for common issues to predominate, it is Schultz's burden to show that the damages issue is *capable* of class-wide resolution. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 312–13. Although Emory challenged Schultz's purported methodologies,[3] the district court found it "crucial" that Emory cited no binding authority that "would *compel* a finding of a *failure* to show class-wide damages." Doc. 98 at 24–25 (emphasis added). Yet the court simultaneously criticized how "Schultz's failure to address Emory's damages arguments and [their] report, in reply, comes very close to abandonment of the issue." *Id.* at 24. In effect, the court placed the burden on Emory to demonstrate that Schultz's models cannot apply to this case, as opposed to Schultz proving their applicability in the first instance. Failure to engage with the models and shifting the burden onto Emory is legal error.[4] *See Comcast*, 569 U.S. at 34; *Brown*, 817 F.3d at 1233–34.

---

[3] "Emory argues that Schultz's expert report does not present a model capable of determining damages but rather merely references two generic economic models—hedonic regression and conjoint analysis—without explaining how those general methods would apply to determine damages in this case." Doc. 98 at 23–24.

[4] Because we hold that the court abused its discretion as to the common methodology analysis, we decline to reach Emory's other challenges on appeal.

We emphasize on remand that the method of proving damages is not necessarily dispositive in the predominance inquiry. Also, insofar as the district court does think that common proof of damages is critical to the predominance inquiry here, Schultz's skeletal models may well be sufficient evidence that, at trial, the models can be fleshed out into actual class-wide damages calculations.[5] But the burden to prove as much is Schultz's. We remand the case to the district court to see if Schultz has carried it.

## IV. Conclusion

We find that the district court abused its discretion in its common methodology analysis. Accordingly, we VACATE and REMAND the case for further proceedings consistent with this opinion. On remand, the district court may properly consider any new materials subsequently supplemented by the pending motion to decertify and their applicability to any of Rule 23(b)(3)'s requirements.

**VACATED and REMANDED.**

---

[5] The Ninth Circuit recently observed in a well-reasoned opinion that "there is no categorical prohibition on a court relying on an unexecuted damages model to certify a class," *Lytle v. Nutramax Labs., Inc.*, 99 F.4th 557, 575 (9th Cir. 2024), and we see much merit in that view.