[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14961
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-02097-CEH-TBM

CHARLES EDWARD CENTER, JR.,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
Customs and Border Protection Agency,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 19, 2018)

Before WILLIAM PRYOR, HULL, and JULIE CARNES, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

Charles Center appeals the dismissal of his complaint that his employer, the Customs and Border Protection Agency, discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Center is a longtime government employee who has suffered multiple injuries on the job. When he returned from workers' compensation leave in 2009, the agency erroneously offered him a position that paid less than his former position. Although the agency quickly corrected its mistake, Center sued the agency for retaliation and disability discrimination. The district court dismissed the complaint for lack of jurisdiction because of the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.*, which provides comprehensive remedies for injured federal workers. In the alternative, it granted summary judgment against Center's claims of retaliation and disability discrimination. We affirm. Center waived his claim of retaliation on appeal. And although the district court had jurisdiction to entertain Center's claim of disability discrimination, we affirm the summary judgment in favor of the agency because Center failed to present evidence that the nondiscriminatory reasons offered by the agency were a pretext for discrimination.

## I. BACKGROUND

In 1999, Center injured his back working as an inspector for the Immigration and Naturalization Service. Later, the Service merged with the Customs and Border Protection Agency, and Center assumed the job title of officer. In 2004 or

2

2005, while Center was classified at pay-grade level 11, step 4, he took a leave of absence due to a back injury and received federal workers' compensation benefits. In 2005, Center resumed his duties, but in 2006, he again took a leave of absence until 2009. And in 2009, he attained a pay-grade level of 11, step 6.

In January 2009, the Office of Workers' Compensation Programs determined that Center had permanent physical restrictions, referred him for vocational rehabilitation services, and requested that the agency find him a suitable position. Within a few months, the field operations office in Tampa, Florida, offered Center a job as a technician at pay-grade level 7, step 1. The field office warned Center that it would "rescind the job offer" and that the agency "may initiate action to separate [him] from [its] employment rolls" if he did not accept the position by May 12, 2009. Center accepted the job.

In 2010, a union steward discovered that "there were [two] full time [pay-grade level 11] Entry Specialist positions available" when Center returned to work, and she demanded to know "why . . . Center [was not] offered one of these equivalent positions" as required by agency regulations. The agency admitted that it had erred by failing to offer Center a job that matched his earlier pay grade and worked to correct the oversight. In January 2011, the field office attempted to establish a "Vessels and Entry Clearance . . . position" at pay-grade level 11 to accommodate Center and "fulfill [its] legal obligation." The agency headquarters

3

approved the reclassification, but a human resources specialist decided that Center's inexperience limited him to a pay-grade level of 9. The agency instead offered Center a position as a Vessel Specialist at pay-grade level 9 with the potential for an early promotion to pay-grade level 11. The written offer stated that, unless Center accepted the offer by July 15, 2011, he would "remain in [his] current position of . . . Technician . . ., which [would] become [his] accepted position of record . . . ." Center accepted the new position.

In November 2011, the agency promoted Center to pay-grade level 11, step 6. Center questioned why he did not receive a higher pay step, and the agency explained that regulations required it to set his pay grade based on his qualifications and the rate achieved before the disabling event, which, for Center, was pay-grade level 11, step 6. In March 2012, Center filed a complaint of employment discrimination with the Equal Employment Opportunity Counselor, but the agency dismissed it after Center filed this civil action in the district court.

Center's complaint in the district court alleged retaliation and disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. He alleged that he "suffered [the] adverse employment actions of [being] deni[ed] . . . his earned rightful compensation grade level . . . and [being] hired for a lower position" in retaliation for "engag[ing] in the statutorily protected activities of accepting the work offered him . . ., inquiring as to [the] availability of suitable

4

work at his compensation grade level[,] and filing an inquiry." And he alleged that he was "discriminated against because of his disabilities" when he was "hired back . . . at a much lower compensation grade" and "not given back-compensation."

The agency moved to dismiss Center's complaint and, in the alternative, for summary judgment, and the district court granted the motion. The district court ruled that it lacked subject matter jurisdiction over Center's claims of retaliation and disability discrimination because his claims "appear[ed] to be seeking judicial review of the Secretary of Labor's . . . compensation decision" under the Compensation Act, 5 U.S.C. § 8101 *et seq.*, a statutory scheme that establishes substantial agency discretion over the treatment of injured workers. In the alternative, the district court granted summary judgment in favor of the agency and against Center's claims of retaliation and disability discrimination. The district court ruled that Center failed to make a prima facie showing of retaliation. And the district court ruled that Center "failed to establish that anyone at [the agency] intentionally discriminated against him because of his disability." It also explained that even if Center could make a prima facie showing of discrimination, "he . . . failed to establish that [the agency's] explanation for placing him in a lower paying position was a pretext for intentional discrimination."

## II. STANDARD OF REVIEW

We review a dismissal for lack of subject matter jurisdiction *de novo*. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). We also review *de novo* a grant of summary judgment. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276 (11th Cir. 2001). A district court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that Center waived his claim of retaliation. Second, we explain that although the district court erred when it ruled that it lacked jurisdiction, it correctly granted summary judgment against Center's claim of disability discrimination because Center failed to establish that the explanation offered by the agency is a pretext for discrimination.

### A.    *Center Waived His Claim of Retaliation.*

Center waived his claim of retaliation when he "fail[ed] to make arguments and cite authorities in support of" his position. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). Although he curtly asserts that this claim "should be allowed to continue," he fails to explain why. And we have repeatedly explained that "argument[s] . . . briefed in the most cursory fashion . . . [are] waived." *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1297 n.3 (11th Cir. 2009);

6

*see also Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) ("Although [the cross-appellant] refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits as to this issue in its initial or reply brief. Accordingly the issue is deemed waived."); *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("In this case, the single footnote in the [appellant's] initial brief did not sufficiently preserve the . . . issue.").

B.    *The District Court Correctly Granted Summary Judgment Against Center's Claim of Disability Discrimination.*

The agency contends that we may affirm on alternative grounds. First, it argues that the district court correctly dismissed Center's claims under the Rehabilitation Act for lack of jurisdiction because the Compensation Act bars judicial review of remedies for work-related injuries. Second, it contends, in the alternative, that the district court correctly granted summary judgment against Center's claim of disability discrimination. We disagree with the first argument, but we agree with the second.

1.    We Have Jurisdiction Over Center's Claim of Disability Discrimination Under the Rehabilitation Act.

Center's claim requires us to determine whether two statutory schemes that concern the treatment of disabled federal employees conflict and, if so, what the effect of the conflict is. The first is the Compensation Act, which is a

7

"comprehensive workers' compensation law for federal employees that is designed to provide quick and uniform coverage for work-related injuries" and provides the agency with extensive discretion over these remedies. *Woodruff v. U.S. Dep't of Labor, Office of Workers Comp. Program*, 954 F.2d 634, 639 (11th Cir. 1992). The second is the Rehabilitation Act, which broadly prohibits federal agencies from discriminating on the basis of disability and provides judicially enforceable rights. *See* 29 U.S.C. §§ 791, 794. We conclude that the statutory schemes do not conflict and that Center may pursue his claim under the Rehabilitation Act.

The Compensation Act provides comprehensive remedies to disabled workers. For example, it offers medical care, *see* 5 U.S.C. § 8103, disability payments, *see id.* §§ 8105–8107, survivor benefits, *see id.* § 8109, and vocational rehabilitation, *see id.* § 8104. Most important to this appeal, the Compensation Act provides injured employees with qualified rights to reinstatement after a workplace injury. *See id.* § 8151. For example, it establishes that, if the employee's "injury or disability is overcome within a period of more than one year," the "department or agency . . . [shall] make all reasonable efforts to place, and accord priority to placing, the employee in his former or equivalent position within such department or agency, or within any other department or agency." *Id.* § 8151(b)(2).

The Compensation Act grants the Secretary of Labor extensive control over the administration of these remedies. Section 8124(a) provides that the Secretary

8

"shall determine and make a finding of facts and make an award for or against payment of compensation . . . after . . . considering the claim presented by the beneficiary and [the evidence]," and section 8145 permits the Secretary to "administer, and decide all questions arising under, [the Compensation Act]." Section 8145 permits the Secretary to "appoint employees to administer [the Compensation Act]" and to "delegate to any employee of the Department of Labor any of the powers conferred [by the Compensation Act]." The Secretary has delegated his authority to the Director of the Office of Workers' Compensation Programs. *See* 20 C.F.R. § 10.1. The Compensation Act also requires the creation of a board of appeals "with authority to hear and, subject to applicable law and the rules and regulations of the Secretary, [to] make final decisions on appeals taken from determinations and awards with respect to claims of employees." 5 U.S.C. § 8149.

The benefits and procedures established in the Compensation Act are largely immune from judicial review. The Compensation Act provides that it is the "exclusive" remedy against the United States "with respect to the injury or death of an employee," *id.* § 8116(c), and we have explained that the Compensation Act represents a legislative "compromise . . . commonly found in workers' compensation legislation . . . [where] employees are guaranteed the right to receive immediate, fixed benefits . . . but in return . . . lose the right to sue the

9

[g]overnment." *Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000) (quoting *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983)). The Compensation Act also grants authority to the Secretary of Labor to "administer and decide all questions arising under [it]," *id.* (citing 5 U.S.C. §§ 8145, 8149), and it provides that "[t]he action of the Secretary or his designee in allowing or denying a payment under [the Act] is . . . final and conclusive for all purposes and with respect to all questions of law and fact . . . [and] not subject to review by another official of the United States or by a court," 5 U.S.C. § 8128. We have explained that these jurisdictional limits ordinarily preclude judicial review. *See Woodruff*, 954 F.2d at 639 (identifying two narrow exceptions: "to review charges that the Secretary violated a clear statutory mandate or prohibition . . . and to consider constitutional claims"). Indeed, "[t]he Secretary has the sole discretionary power to determine in the first instance whether to make an award of . . . benefits in a particular case," *id.* at 640 (citation and internal quotation marks omitted), and, "[a]fter the Secretary makes a determination to award benefits, the injured employee's exclusive remedy is to accept [Compensation Act] coverage," *id*. at 639.

Our precedents establish that the Secretary's determination of the remedy for harms that stem from a workplace injury ordinarily is conclusive. For example, in *Noble* we held that a federal employee could not sue under the Federal Tort Claims

Act to recover for an injury that the employee suffered in the course of his work and that allegedly was exacerbated when his employer "delay[ed] in authorizing surgery," 216 F.3d at 1234; *accord id.* at 1232–33, "because the Secretary . . . determined that the alleged losses fell within the coverage of the [Compensation Act] but were uncompensable thereunder," *id.* at 1232. Specifically, after the employee had demanded that the Secretary grant him "additional compensation under [the Compensation Act] for the prolonged pain and job loss that allegedly resulted from the . . . delay," the Secretary had determined that his "compensation payments and work related medical expenses have been paid and will continue to be paid" and that the employee's "request for reimbursement" for his post-injury suffering "must be denied as there is no provision under the [Compensation] Act for such payments." *Id.* at 1233. Although the plaintiff insisted that the aggravation of his injury was "a separate injury from his initial on-the-job injury" and thus "outside the coverage of [the Compensation Act]," *id.* at 1235, we explained that the Secretary was entitled to reach a contrary conclusion on this "substantial question as to whether or not the injury occurred in the performance of the employee's duty," *id.* at 1235 (quoting *Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979)).

And in *Wilder v. United States* we held that the Secretary was entitled to "determin[e] . . . in the first instance" whether alleged medical malpractice that

11

"aggravat[ed] [a federal employee's] work-related injury was compensable under" a parallel compensation scheme, the Longshore and Harbor Workers' Compensation Act, before an injured employee could sue under the Tort Claims Act. 873 F.2d 285, 288 (11th Cir. 1989). We explained that the Longshore Act, like the Compensation Act, provides the "exclusive" remedy for workplace injuries. *Id.* at 287. And instead of deciding for ourselves the "discrete issue . . . whether the subsequent aggravation of [the initial] injury by the alleged malpractice" was compensable under the Act, we determined that this "substantial question of coverage" required an initial determination by the Secretary. *Id.* at 288. Accordingly, we explained that Wilder could not "pursue her remedy under the [Tort Claims Act]" until she "made an application for benefits and had it denied," and we declined to "speculate on the outcome of such an application." *Id.*

In contrast with the broad discretion granted to the Secretary by the Compensation Act, the Rehabilitation Act both forbids federal agencies from discriminating on the basis of disability and establishes judicial review of agency actions. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 193 (1996) (discussing remedies against the federal government under the Rehabilitation Act); *Doe v. Garrett*, 903 F.2d 1455, 1461 n.10 (11th Cir. 1990) (explaining that a federal employee has a cause of action against his employer under the Rehabilitation Act). For example, the Rehabilitation Act requires federal agencies to institute plans for the hiring of

12

persons with disabilities, 29 U.S.C. § 791(b), and establishes that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by any Executive agency," *id.* § 794(a).

The agency argues that the Compensation Act forecloses judicial review of Center's complaint of disability discrimination under the Rehabilitation Act. It underscores that the Compensation Act creates exclusive administrative discretion over the treatment of injured workers, and it concludes that Center's claim of discrimination under the Rehabilitation Act is simply a "collateral[] attack [on] his [Compensation Act] remedies." We disagree.

Unlike the complaints in *Noble* and *Wilder* which sought to invoke the Tort Claims Act to obtain alternative relief stemming from workplace injuries, Center's complaint seeks relief for a different kind of injury. More specifically, he alleges that the agency injured him when it "knowingly and willfully discriminated against [him] on the basis of his disabilities in violation of the Rehabilitation Act." This alleged wrong is distinct from the initial workplace injury and thus falls outside of the coverage of the Compensation Act.

Because the Compensation Act and the Rehabilitation Act concern different kinds of injuries, they are not in conflict and we cannot avoid giving effect to both. The two Acts impose independent statutory obligations, and "when two statutes are

13

capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). The Compensation Act obliges agencies to "make all reasonable efforts to place" an injured employee "in his former or equivalent position." 5 U.S.C. § 8151(b)(2). And the Rehabilitation Act separately forbids federal entities from discriminating against employees with disabilities. *See* 29 U.S.C. §§ 791, 794. Although these statutory schemes may at times concern the same general subject matter—namely the right of an employee to be considered for a suitable job after suffering an injury at work—they are distinct legislative mandates that are capable of coexistence. And we "are not at liberty to pick and choose among congressional enactments." *Morton*, 417 U.S. at 551.

To be sure, Congress may exempt agencies from compliance with the Rehabilitation Act when it creates workplace laws that explicitly conflict with and supersede the requirements of the Rehabilitation Act. For example, in *Castro v. Secretary of Homeland Security*, we held that a portion of the Aviation and Transportation Security Act that establishes qualifications for security screening personnel, *see* 49 U.S.C. § 44935(e), "exempts [the Transportation Security

14

Administration] from compliance with the Rehabilitation Act in establishing employment standards for security screeners," 472 F.3d 1334, 1337 (11th Cir. 2006). We underscored that the Security Act explicitly directs the Transportation Security Administration to establish hiring criteria "*notwithstanding any other provision of law*," *id.* (alteration adopted) (emphasis added) (quoting 49 U.S.C. § 44935 note); *accord* 49 U.S.C. § 44935(e)(2)(A), and we concluded that this language "indicat[es] that the statute . . . is 'intended to take precedence over any preexisting or subsequently-enacted legislation on the same subject,'" *Castro*, 472 F.3d at 1337 (alterations adopted) (quoting *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995)). We also highlighted that the Security Act "explicitly requires [the Transportation Security Administration] to promulgate hiring standards that are inconsistent with the Rehabilitation Act's prohibition against making hiring decisions based on physical disabilities." *Id.* (citing 49 U.S.C. § 44935(f)).

In contrast, the Compensation Act offers no exception to the requirements of the Rehabilitation Act. Indeed, the section of the Compensation Act that addresses its "[e]ffect on other statutes" says nothing to exclude application of the Rehabilitation Act. 5 U.S.C. § 8150. Nor does the Compensation Act explicitly impose "hiring standards that are inconsistent with the Rehabilitation Act[]."

15

*Castro*, 472 F.3d 1337. Unless Congress specifically directs otherwise, agencies must comply with all relevant mandates.

2.    The Agency is Entitled to Summary Judgment Against Center's Claim of Disability Discrimination.

We apply the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to claims of discrimination under the Rehabilitation Act that are based on circumstantial evidence, *see Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act."). First, the plaintiff must "establish a prima facie case of discrimination . . . [by] showing that (1) [he] had a disability; (2) [he] was otherwise qualified for the position; and (3) [he] was subjected to unlawful discrimination as the result of [his] disability." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007); *see also Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). If he does so, the "burden . . . shift[s] to [the employer] to articulate a legitimate, nondiscriminatory reason for [the action]." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). The burden then returns to the plaintiff "to show [that this] reason [is] unworthy of credence and a pretext for discrimination." *Id.* (citation and internal quotation marks omitted). He must present actual evidence to satisfy this burden because "[c]onclusory allegations of discrimination, without more, are not

16

sufficient to raise an inference of pretext." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016) (citation and internal quotation marks omitted).

The parties dispute whether Center can establish a prima facie case of discrimination, but we need not decide this question because Center fails to establish the last element of the test: that the reasons provided by the agency are a pretext for discrimination. Center concedes that he was unable to perform the duties of his former position when he returned to work in 2009, so we cannot draw an inference of discrimination from the decision of the agency to assign him to a different role. To be sure, the agency erred in reassigning Center when it failed to offer him one of the available higher-paid positions, but it quickly corrected its mistake. And Center offers no evidence to establish that this temporary error was anything but a genuine oversight. Despite his conclusory accusations that officials were "not a bit friendly . . . to [him]" and "knew that what was happening to [him] was wrong," he offers no actual evidence that would allow a reasonable jury to find discrimination. Indeed, when asked in his deposition why he filed a lawsuit, he expressed confusion about his evidence when he explained: "Well, I've felt I was very much discriminated against. And I wish I could say a reason why I think that happened, *but I can't*." "This [C]ourt has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. Gen.*

17

*Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). And Center's speculations are insufficient.

## IV. CONCLUSION

We **AFFIRM** the grant of summary judgment in favor of the agency and against Center's complaint of disability discrimination.