[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12478
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00369-C

CHARLES A. JAY,

Plaintiff-Appellant,

versus

AUBURN UNIVERSITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 28, 2020)

Before MARTIN, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Charles A. Jay appeals the magistrate judge's[1] grant of summary judgment in favor of Auburn University[2] on his disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 794.[3]  On appeal, Jay argues that the magistrate judge erred in granting summary judgment, to begin, because Jay made a prima facie case of disability discrimination, based on his neck and shoulder injuries and post-traumatic stress disorder diagnosis ("PTSD").  Jay also argues that Auburn's asserted reasons for not hiring him—his application's lack of relevant experience and contact information for references—were pretextual.  After careful review, we affirm.

## I.

Jay, proceeding pro se, filed suit against Auburn alleging that the school discriminated against him based on his disability in 2016 by (1) failing to hire him, (2) failing to accommodate him once he made it aware of his disability, and (3) hiring a non-disabled applicant, in violation of the Rehabilitation Act.

---

[1] The parties consented to have a magistrate judge conduct all proceedings and enter a final judgment in this case.

[2] Jay was initially joined by his wife, Laurie R. Jay, as a co-plaintiff, and named additional defendants against whom he was proceeding.  However, these other parties were dismissed from the case and administratively removed from the docket.

[3] Jay also notes he is appealing the district court's orders denying his motion for a new trial and motion to alter judgment.  However, because Jay filed his notice of appeal shortly after Auburn filed its responses to these motions, it does not appear that the district court ever ruled on them.  Moreover, Jay has not made arguments related to these motions, so we will not address them.  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (holding that appellant abandoned claim by making passing reference to it).

2

Jay's disability status results from a variety of impairments. In April 2001, he broke his neck when he fell off a ladder while cutting down a large tree limb on his property. He had surgery to repair the damage, but has not been treated for neck-related issues since 2016. In 2010, Jay fell at home and damaged his left shoulder. Following a surgery in 2011, Jay is able to use his left arm and shoulder without substantial limitations. He has not sought medical treatment or rehabilitation therapy for his shoulder since 2014.

Jay was also diagnosed with post-traumatic stress disorder ("PTSD") by a clinical psychologist. He does not take any medication for PTSD and has not sought any treatment since 2006. Jay describes his symptoms of PTSD as "uncontrollable anger" and the feelings he experiences when he believes he has been disrespected, but has not identified any major life activity that his PTSD substantially limits.

In December 2016, Jay applied for the Tech I/II position at Auburn's Rural Studio.[4] The minimum qualifications required "[b]asic knowledge of construction, electrical, and plumbing codes and [the] ability to perform construction, plumbing, [and] electrical jobs," as well as the "ability to operate heavy equipment." The

---

[4] The Rural Studio is an off-campus design-build program of the School of Architecture, Design and Construction of Auburn University. The program provides third- and fifth-year architecture students with a hands-on educational experience.

desired qualifications "include the ability to resolve routine problems independently and provide instruction to students on construction techniques[.]"

On his application, Jay listed three prior jobs for his work experience: (1) self-employed catfish farmer, (2) tractor mechanic at SunSouth, and (3) electrician, plumber, and "Sambo Assistant" for Auburn.[5]  He did not list any specific duties for any of these jobs and did not detail the basis for his qualifications or his experience.  Jay also did not list any individual references for Auburn to contact and instead broadly stated his references as "Rural Studio affiliates 94–99."  The only person named on his application was Sambo Mockbee, who had been deceased for 15 years.

As part of the application process, Jay voluntarily self-identified as "disabled."  This information is kept separate from the application.  Only Auburn's Office of Human Resources (the "HR office") and Affirmative Action/Equal Opportunity Office have access to an applicant's voluntary demographic information.  Faculty and staff conducting an employment search, including at the Rural Studio, do not have access to any self-identifying demographic information for applicants seeking positions within their department.

---

[5] Professor Samuel "Sambo" Mockbee co-founded the Rural Studio in 1993.  Jay worked with Mockbee as an independent contractor for the Rural Studio from about 1993 to 1999, but was never an employee of Auburn or its affiliates.  Jay continued to be friends with Mockbee after Jay stopped working on Rural Studio projects.  Mockbee served as the Director of the Rural Studio until his death in December 2001.

Auburn's HR office determined Jay met the minimum qualifications for the Tech I/II position and forwarded his application to the search committee at the Rural Studio. Once Jay received notification that his application had entered the next stage, he called the HR office and spoke with Chris Thompson, Manager of Employment Administration. During that phone call, Jay told Thompson that he received disability benefits, but did not indicate what his disability was and did not ask for any accommodation or assistance with the application process.

Professor Xavier Vendrell and Johnny Parker, the Rural Studio's Construction Supervisor, reviewed the six Tech I/II applications they received from the HR office. Vendrell and Parker selected three applicants to be interviewed. Jay was not one of them because his application did not show that he had relevant experience. Vendrell and Parker were also not able to contact any references for Jay.

After he submitted his application, Jay claims he called Auburn's HR office requesting accommodations, but HR did not respond. Jay learned that Auburn later hired Mason Hinton, a non-disabled individual with what Jay characterized as fewer qualifications, instead of him. He proceeded to file a claim with the Equal Employment Opportunity Commission ("EEOC") and this suit followed.

After engaging in discovery and following summary judgment briefing, the magistrate judge granted Auburn's motion for summary judgment. The magistrate

judge found that Jay could not establish a prima facie case of disability because his claimed injuries did not substantially limit any major life activity. The magistrate judge also found that, even if Jay was disabled, Auburn did not hire Jay because he (1) "did not demonstrate relevant experience to the degree demonstrated by the other applicants," and (2) failed to list identifiable references with contact information on his application. The magistrate judge thus concluded that Auburn's reasons for not hiring Jay were legitimate, nondiscriminatory reasons that Jay could not rebut. Finally, the magistrate judge found that Jay's claim failed because he never requested any accommodation from Auburn. Jay appeals each of these rulings. He also appeals the magistrate judge's failure to grant his motion to suppress the entry of his deposition into the summary judgment record.

## II.

We begin with Jay's evidentiary challenge. In support of its motion for summary judgment, Auburn attached, among other things, excerpts from Jay's deposition. Jay then moved to suppress his deposition, arguing that it was unsigned and inadmissible. The magistrate judge noted he did consider Jay's motion to suppress simultaneously with Auburn's motion for summary judgment, although the judge did not expressly rule on Jay's motion in its order granting Auburn summary judgment.

6

A district court is "entitled to broad discretion in managing pretrial discovery matters." Klay v. All Defendants, 425 F.3d 977, 982 (11th Cir. 2005) (quotation marks omitted). Thus, we review a district court's discovery rulings, including the denial of a motion to suppress a deposition at summary judgment, "for abuse of discretion." Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 826 (11th Cir. 2000).

On appeal, Jay challenges the district court's reliance on his deposition testimony on two grounds: (1) the deposition was improperly taken, and (2) the deposition was improperly entered because Jay did not read and correct it before its submission to the court. However, Jay has waived his objection to the former because he failed to object to any defects "during the deposition." Fed. R. Civ. P. 32(d)(3)(B)(ii); see Cabello v. Fernandez-Larios, 402 F.3d 1148, 1160 (11th Cir. 2005) (holding that the objection was waived "[b]ecause the defect . . . could have been cured at the taking of the deposition").

As to the latter, Jay claims he didn't have "proper time" to read, correct, and sign his deposition before it was entered into the record. He says he was harmed by this error because Auburn misquoted him and the magistrate judge based the entire summary judgment order on that incorrect quote. It is notably clear from the record that Jay is not actually challenging any error in the content of the deposition transcript. He is instead challenging the magistrate judge's determination of the

facts based on his transcript. He says the magistrate judge relied on one statement: "I can do everything, yes, ma'am, I'm normal." According to Jay, the magistrate judge erred by relying only on that statement and failing to consider another, contradictory statement:

> I can't do anything I need to do, Ma'am. I can't—no, I can't do anything I need to do, ma'am. I can't just—I can't put my cloth[e]s on right, I can't sleep right, can't turn my head right. Oh, there's a lot of things I can't do. I'm just not normal.

This is not a proper basis on which to object to how the court officer transcribed the testimony under Rule 32(d)(4).[6]

Therefore, the district court did not err by considering Jay's deposition at summary judgment.

## III.

Next, we turn to the merits of Jay's disability claim. We review de novo a district court's grant of summary judgment "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." Stephens v.

---

[6] Auburn submitted only portions of Jay's deposition, and did not include the page Jay cites in his brief. To the extent Jay is suggesting the magistrate judge erred by not requiring Auburn to submit a complete copy of his deposition, Jay never submitted the remaining deposition portions he desired, and never moved the court to compel Auburn to submit the complete documents, as the Federal Rules of Civil Procedure permit. See Fed. R. Civ. P. 32(a)(6); see also Fed. R. Evid. 106 ("If a party introduces . . . part of a writing . . . , an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time."). As a result, he cannot fault the magistrate judge for failing to consider evidence not in the record.

Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014). Summary judgment is appropriate when the movant demonstrates that no genuine issue of material fact exists and judgment should be granted as a matter of law. Id. Once the movant submits a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show that specific facts exist that create a genuine issue for trial. Id.

Where a discrimination claim under the Rehabilitation Act rests on circumstantial evidence, we apply the three-part burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Center v. Sec'y, Dep't of Homeland Sec., 895 F.3d 1295, 1303 (11th Cir. 2018). Under this framework, once a plaintiff establishes a prima facie discrimination case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. Id. To meet its burden, the employer must explain the nondiscriminatory reasons for the action, but it need not establish those reasons by a preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256–57, 101 S. Ct. 1089, 1095–96 (1981). If the employer comes forward with a legitimate reason, the burden returns to the plaintiff to show that the employer's given reason is pretextual. Center, 895 F.3d at 1303. Provided the reason given "might motivate a reasonable employer," the plaintiff must meet

9

the employer's reason "head on and rebut it" in order to prove pretext.  Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

On appeal, Jay claims he made out a prima facie case of disability discrimination and that the magistrate judge erred in concluding that Jay failed to show Auburn's reasons for hiring him were pretextual.  We need not reach the first issue because even if Jay had made out a prima facie case, he has failed to rebut Auburn's legitimate, nondiscriminatory reasons for not hiring him.[7]  We will therefore address the second and third steps of the McDonnell Douglas framework.

Auburn offered legitimate, nondiscriminatory reasons, supported by evidence, for its choice not to hire Jay.  Jay listed his previous work experience as: (1) catfish farmer, (2) tractor mechanic, and (3) "Electrician Plumber and Sambo Assistant," but provided either zero or minimal descriptions of his job or duties. Jay made passing references to Mockbee and "Rural Studio affiliates," but he did not provide Auburn with the information of any living person who could provide a reference for Jay's work.  In comparison, Hinton's application listed several duties for each work experience, and contained names of immediate supervisors and names and contact information for several references.  Based on their applications,

---

[7] Because the question of accommodations goes to an element of the prima facie case, we also will not address Jay's accommodation arguments.  See Boyle v. City of Pell City, 866 F.3d 1280, 1288 (11th Cir. 2017) (explaining that the question of whether a plaintiff is qualified for a position depends on whether he is "able to perform the essential functions of the job with or without a reasonable accommodation").

Auburn did not select Jay because he had "[l]ess relevant experience than other applicants" and they were "unable to contact references."  They did select Hinton because he "possessed a range of useful, pertinent, technical skills and practical experience related to the job"; and "was willing to study/continue to study relevant course work."  There is sufficient evidence in the record to support the magistrate judge's finding that Auburn had legitimate, nondiscriminatory reasons for not hiring Jay.

The burden thus shifts back to Jay to rebut Auburn's stated reasons, but he has not done so.  He did not demonstrate that the above reasons were false before the district court.  Indeed, Jay's own application contained the deficiencies set forth above, and he submitted as evidence Auburn's document describing why it made the hiring decisions.

Neither did Jay show that Auburn's reasons were pretextual.  Jay seems to argue that Auburn's reasons were pretextual because Parker, who was part of the hiring committee, was both unqualified to review Jay's application and motivated to hire Hinton because Parker knew Hinton's family socially.  Jay also says he was more qualified for the position, and that the hiring committee was aware of his disability.  As evidence of the committee's awareness, he points to the "Reasonable Accommodation Notice" he provided with his application, references

his shoulder injury, and mentions his prior interactions with members of the hiring committee.

These allegations are insufficient. Because Auburn's reasons—namely, that he lacked relevant experience and did not identify references with contact information—"might motivate a reasonable employer," Jay was required to "meet [each] reason head on and rebut it" in order to prove pretext. Chapman, 229 F.3d at 1030. However, instead of addressing Auburn's reasons, Jay offered only conclusory assertions about the hiring committee's motivations, its implied knowledge of his disability, and his own assessment of the value of his work history.[8] This is not enough to rebut the proffered reasons head on or create the inference of pretext. See id.

The magistrate judge did not err in granting Auburn summary judgment because Jay failed to rebut Auburn's legitimate, nondiscriminatory reasons for not hiring him.

**AFFIRMED.**

---

[8] We will not address any new arguments in Jay's reply brief because they are not properly before this Court. Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (per curiam).