**FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11411
_____

JOSEPH SIMONE,

*Plaintiff-Appellant,*

*versus*

SECRETARY OF HOMELAND SECURITY,
  United States Department of Homeland Security,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60746-RAR

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

BRANCH, Circuit Judge:

In this lawsuit, Joseph Simone, a former security screener with the Transportation Security Administration ("TSA"), contends that he was fired and retaliated against because of a

disability in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. §§ 791(b), 794.  The district court granted the Secretary of the U.S. Department of Homeland Security's (the "Secretary")[1] motion to dismiss the case because the enabling act for Simone's employer, the Aviation and Transportation Security Act ("ATSA"), precludes disability discrimination claims against TSA.   In dismissing Simone's complaint, the district court relied on *Castro v. Secretary of Homeland Security*, 472 F.3d 1334, 1338 (11th Cir. 2006), in which we held that ATSA exempts TSA from the requirements of the Rehabilitation Act with respect to the hiring of security screeners.  But in 2012, Congress passed the Whistleblower Protection Enhancement Act (the "WPEA"), which explicitly subjects TSA to Rehabilitation Act claims.  *See* 5 U.S.C. § 2304.  Simone argues that the WPEA abrogated our decision in *Castro*.  The government responds that (1) *Castro* can be reconciled with the WPEA, and (2) even if the two cannot be reconciled, Simone cannot bring his claim in federal district court.

After careful review, and with the benefit of oral argument, we hold that the WPEA abrogated *Castro* and extended the protections of the Rehabilitation Act to TSA security screeners.  Accordingly, we vacate and remand to the district court.

---

[1] TSA is an agency within the Department of Homeland Security.  6 U.S.C. § 203(2).

## I.    Background[2]

Simone served as a Transportation Security Officer ("TSO") with TSA at the Fort Lauderdale-Hollywood International Airport in Florida. His job was to screen airline passengers and their baggage at security checkpoints. When Simone was hired, he disclosed that he had a heart condition—a mitral valve prolapse—that caused occasional heart palpitations. At the time, a TSA physician determined he was medically fit for the job and cleared him to be hired.

At various times during his employment, Simone took leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, due to his condition, resting for a day or so to recover from heart palpitations. But, in general, Simone's condition did not affect his ability to perform the essential functions of his job when he was on duty.

In 2014, however, TSA decided that Simone was no longer medically qualified to serve as a TSO and proposed to remove him from federal service. He was placed on administrative leave on

---

[2] Because Simone's complaint reaches us at the motion to dismiss stage, we "accept[] the complaint's allegations as true and constru[e] them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quotation omitted).

August 22, 2014.[3]  Simone was eventually removed from federal service in February 2015.[4]

Simone filed this lawsuit against the Secretary alleging four claims under the Rehabilitation Act, 29 U.S.C. §§ 791(b), 794. Count I alleged disability discrimination, specifically that TSA "remov[ed] him from federal service because of his disability." Count II alleged that TSA failed to provide a reasonable accommodation to allow Simone to continue working.  Count III alleged retaliation for Simone's complaints of discrimination.  And Count IV alleged unlawful interference and coercion.

The Secretary moved to dismiss, arguing in part that ATSA precluded Simone's claims under the Rehabilitation Act.  Simone responded, arguing that ATSA's preclusion of Rehabilitation Act claims was abrogated by a later statute, the WPEA.

The district court agreed with the Secretary that ATSA precluded Simone's Rehabilitation Act claims, relying on our 2006 decision in *Castro*, 472 F.3d at 1338, which held that a TSA agent cannot state a claim against TSA based on a violation of the

---

[3] In response, Simone then filed an administrative complaint with TSA's Civil Rights Division in December of 2014, alleging discrimination and retaliation in violation of the Rehabilitation Act.

[4] After being removed, Simone requested a hearing on his administrative complaint before an Equal Employment Opportunity Commission ("EEOC") administrative law judge ("ALJ").  The EEOC ALJ granted TSA's motion for summary judgment against Simone's complaint for discrimination and retaliation on September 27, 2019.  Years later, the EEOC issued a final order denying Simone's appeal and request for reconsideration.

23-11411　　　　　　Opinion of the Court　　　　　　　5

Rehabilitation Act. The district court explained that according to *Castro* "the plain language of the ATSA allows—and in some circumstances, requires—TSA to make employment decisions that are contrary to the requirements of the Rehabilitation Act."[5] Thus, as the district court recited from *Castro*, ATSA "indicates that TSA need not take the requirements of the Rehabilitation Act into account when formulating hiring standards for screeners." *Id.* at 1337. The district court relied on *Castro*'s statement that ATSA's text indicates Congress's intent for ATSA "to take precedence over any preexisting or subsequently-enacted legislation on the same subject." *Id.* (alterations adopted) (citation omitted). The district court also rejected Simone's counterargument that the later-enacted WPEA abrogated *Castro* and permitted Simone's suit. Accordingly, the district court dismissed Simone's complaint.[6]

　　　Simone timely appealed.

## II.　　Standard of Review

　　　"We review *de novo* the district court's grant of a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro*, 693 F.3d at 1335 (quotation omitted). We review

---

[5] This conclusion was later bolstered by our sister circuits. *See Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011) (collecting other circuit decisions arriving at the same conclusion prior to the enactment of the WPEA).

[6] The district court declined to address the Secretary's argument that Simone's suit was barred because he had failed to exhaust his administrative remedies.

6                    Opinion of the Court                    23-11411

questions of statutory interpretation *de novo*. *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021).

## III.    Discussion

Simone argues that the district court erred in dismissing his complaint because the WPEA "show[s] that Congress intended to override those ATSA provisions which were held in *Castro* to preclude TSO screeners from filing suit under the Rehabilitation Act."

Simone's argument involves consideration of the Rehabilitation Act, ATSA, and the WPEA, their interaction with one another, and an examination of our cases interpreting them. To determine the meaning and interplay of related statutes, "the Court relies on traditional rules of statutory interpretation. That does not change because the case involves multiple federal statutes." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014). "Nor does it change because an agency is involved." *Id.*; *cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron* deference). "Analysis of the statutory text, aided by established principles of interpretation, controls." *POM Wonderful*, 573 U.S. at 112.

Doing so, we find that the WPEA confers Rehabilitation Act protections on TSOs like Simone, thus superseding certain provisions of ATSA and abrogating our decision in *Castro*. We begin our analysis with the Rehabilitation Act and ATSA, highlighting the tension between the two.

The Rehabilitation Act prohibits federal employers from discriminating against individuals with disabilities who are otherwise qualified to hold the job in question. *See* 29 U.S.C. § 794.[7] The standards used to determine violations of the Rehabilitation Act are set forth in Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, which itself prohibits discrimination on the basis of disability. *See* 29 U.S.C. § 794(d) (referencing the ADA);[8] *see also* 42 U.S.C. § 12102(1) (defining a "disability" as "a physical or mental impairment that substantially limits one or more major life activities"). Accordingly, the Rehabilitation Act allows federal employees to sue in federal district court if they are the victim of federally prohibited disability

---

[7] Section 794(a) of the Rehabilitation Act provides that

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency . . . .

29 U.S.C. § 794(a).

[8] Section 794(d) of the Rehabilitation Act provides that

> [t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . as such sections relate to employment.

29 U.S.C. § 794(d).

discrimination.  *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,* 507 F.3d 1306, 1310–11 (11th Cir. 2007).

ATSA, however, sets up a hiring structure for TSA security screeners that is an exception to the Rehabilitation Act's general sweep because it allows TSA to discriminate in hiring on the basis of disability.  ATSA sets out necessary "aptitudes and physical abilities" for employees of TSA, including TSOs like Simone.  *See* 49 U.S.C. § 44935(a)–(f).  Specifically, ATSA provides that the TSA Administrator "shall establish qualification standards for individuals to be hired by the United States as security screening personnel."  *Id.* § 44935(e)(2)(A).  These qualification standards apply to TSA hiring "[n]otwithstanding any other provision of law."  *Id.* § 44935(e)(2)(A)(iii)  (cross-referencing  § 44935(f)). Section 44935(f), in turn, describes these requirements in reference to TSA screening personnel, and includes that TSOs must "possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills, to [specified]  standards."  *Id.* § 44935(f)(1)(B).[9]  These  baseline

---

[9] Those specified aptitudes and abilities are as follows:

> (i) Screeners operating screening equipment shall be able to distinguish on the screening equipment monitor the appropriate imaging standard specified by the Administrator.

> (ii) Screeners operating any screening equipment shall be able to distinguish each color displayed on every type of screening equipment and explain what each color signifies.

23-11411　　　　　　Opinion of the Court　　　　　　9

"physical abilities" are meant to help TSOs perform their general duties. *See id.* § 44935(f)(1)(B).

As a result, ATSA's statutory language provides that TSA personnel are not subject to the normal remedial processes outlined in the Rehabilitation Act because "[n]otwithstanding any other provision of law, the [TSA Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for . . . individuals . . . to carry out the screening functions." *Id.* § 44935 note; *see* ATSA, Pub. L. No. 107-71, tit. I, § 111(d), 115 Stat. 597, 620 (2001). Thus, while the Rehabilitation Act forbids disability discrimination in federal hiring, ATSA allows TSA to discriminate based on disability when hiring TSOs.

Confronted with the tension between these two statutes in *Castro*, we held that "[t]he plain language of ATSA indicates that

---

(iii) Screeners shall be able to hear and respond to the spoken voice and to audible alarms generated by screening equipment in an active checkpoint environment.

(iv) Screeners performing physical searches or other related operations shall be able to efficiently and thoroughly manipulate and handle such baggage, containers, and other objects subject to security processing.

(v) Screeners who perform pat-downs or hand-held metal detector searches of individuals shall have sufficient dexterity and capability to thoroughly conduct those procedures over an individual's entire body.

49 U.S.C. § 44935(f)(1)(B)(i)–(v).

TSA need not take the requirements of the Rehabilitation Act into account when formulating hiring standards for screeners." 472 F.3d at 1337. Specifically, we pointed to ATSA's clause allowing "TSA to establish hiring criteria . . . for security screeners 'notwithstanding any other provision of law.'" *Id.* (alteration adopted). We noted that a "notwithstanding" clause indicated that Congress meant for the language of ATSA "to take precedence over any preexisting . . . legislation on the same subject." *Id.* (alterations adopted).[10] We read the "notwithstanding" clause "as Congress's indication that" ATSA allows TSA to establish "standards and conditions of employment . . . whether or not those standards and conditions of employment are consistent with the Rehabilitation Act." *Id.* Thus, unless the WPEA abrogates our holding in *Castro*, we are bound to hold that Simone cannot state a claim against the Secretary under the Rehabilitation Act. *See United States v. Woodard*, 938 F.2d 1255, 1258 n.4 (11th Cir. 1991) ("[A] clear change in the law by Congress could . . . justify a panel of this court in not following an earlier panel's decision, where the prior panel's decision was based on legislation that had been changed or repealed.").

We turn now to the WPEA. In 2012, the WPEA amended the Civil Service Reform Act of 1978 ("CSRA"), providing enhanced whistleblower and employment discrimination

---

[10] *Castro* also stated that a "notwithstanding" clause means that a statute should take precedence over "subsequently-enacted legislation." 472 F.3d at 1337. More on that later.

protections to federal employees.[11]  *See* Pub. L. No. 112-199, tit. I, § 109(a)(2), 126 Stat. 1465, 1470.  The WPEA specifically addresses statutory protections available to TSA employees:

> *Notwithstanding any other provision of law*, any individual holding or applying for a position within the Transportation Security Administration shall be covered by—
>
>> (1) the provisions of section 2302(b) (1), (8), and (9);
>>
>> (2) any provision of law implementing section 2302(b) (1), (8), or (9) by providing any right or remedy available to an employee or applicant for employment in the civil service; and
>>
>> (3) any rule or regulation prescribed under any provision of law referred to in paragraph (1) or (2).

5 U.S.C. § 2304(a)(1)–(3) (emphasis added).  The cross-referenced portions of § 2302(b) prohibit federal employment discrimination. Specifically, the provisions prohibit the federal government from discriminating based on a "handicapping condition . . . under

---

[11] The CSRA allows a federal employee subjected to an adverse personnel action to, among other things, "appeal [his] agency's decision to the Merit Systems Protection Board." *Kloeckner v. Solis*, 568 U.S. 41, 43 (2012); *see also* 5 U.S.C. §§ 7512, 7701.

Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791)";[12] whistleblowing activity;[13] or "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation."[14]  So, ultimately, the WPEA mandates that "[n]otwithstanding any other provision of law, any individual holding or applying for a position within the Transportation Security Administration shall be covered by" the provisions of the Rehabilitation Act prohibiting disability discrimination and retaliation for the exercise of any right granted by the Rehabilitation Act.  5 U.S.C. §§ 2304(a), 2302(b)(1), (9); 29 U.S.C. § 791.

In construing statutes, "when the statutory language is plain, we must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009).  When we review the text of a statute, the use of "notwithstanding" carries a lot of weight: indeed, as the Supreme Court has explained, for a statute "to supersede all other laws," a "clearer statement is difficult to imagine" than "notwithstanding" language. *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993).  And in *Castro*, we similarly noted the importance of the "notwithstanding" language, holding it indicated Congressional intent for "the statute containing that language . . . 'to take precedence over any preexisting . . . legislation on the same subject.'" *Castro*, 472 F.3d at 1337 (alteration adopted).  Here, as

---

[12] *See* 5 U.S.C. § 2302(b)(1)(D).

[13] *See* 5 U.S.C. § 2302(b)(8).

[14] *See* 5 U.S.C. § 2302(b)(9)(A).

discussed, the plain language of the WPEA confers Rehabilitation Act protections on TSA security screeners, which conflicts with ATSA. *See* 5 U.S.C. § 2304(a). Because the later-enacted WPEA confers its protections using "notwithstanding" language, *see id.*, it supersedes ATSA. *See Cisneros*, 508 U.S. at 18.

That the WPEA does not explicitly overrule ATSA's bar on TSOs bringing Rehabilitation Act claims does not undermine this plain reading of the statute. When two statutes irreconcilably conflict, we must give effect to the later statute as repealing the prior, even if that repeal occurs by implication. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 55, at 327 (2012) ("Repeals by implication are . . . very much disfavored. But a provision that flatly contradicts an earlier-enacted provision repeals it.") (quotation omitted).

Likewise, our prior-panel-precedent rule does not prevent us from reaching this conclusion. Typically, we may not disregard the holding of a prior panel of this Court absent a decision of the Supreme Court or this Court sitting *en banc*. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). But our precedent may also be abrogated by statute. *See, e.g.*, *Woodard*, 938 F.2d at 1258 n.4. When we consider whether a statute has abrogated our prior precedent, we require "a clear change in the law" to hold that a prior precedent has been overruled by subsequent legislation. *Id.*; *see also Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1043 n.7 (11th Cir. 2019). In *Sellers*, for example, we held that the prior-panel-precedent rule did not apply to protect a prior holding about the requirements of

the Bankruptcy Code because Congress had amended the Code to require a contrary outcome. *Sellers*, 941 F.3d at 1043 n.7. Here, we have precisely the same situation—the prior-panel-precedent rule and our holding in *Castro* do not prevent us from holding that Rehabilitation Act protections are available for TSOs like Simone because the WPEA specifically provides them with Rehabilitation Act protections.[15] Accordingly, we hold that the WPEA abrogated *Castro* by specifically providing Rehabilitation Act protections to TSOs like Simone. *See* 5 U.S.C. §§ 2304(a), 2302(b)(1), (9); 29 U.S.C. § 791; *Woodard*, 938 F.2d at 1258 n.4.

The Secretary argues that the district court correctly concluded that *Castro* compelled its ruling that Simone could not state a claim under the Rehabilitation Act because we stated in *Castro* that ATSA's "notwithstanding" clause indicates that Congress intended for ATSA "to take precedence over any preexisting or *subsequently-enacted*" legislation on the same subject. *Castro*, 472 F.3d at 1337 (emphasis added). For this reason, the Secretary argues that it does not matter that the subsequently enacted WPEA also includes a "notwithstanding" clause. This precedent-based reasoning too narrowly focuses on what *Castro* said, as opposed to what it held. "[W]e have pointed out many times that regardless of what our court says in its opinion, the

---

[15] We note that, to the extent that the Secretary argues that our prior-panel-precedent rule prevents *Castro* from being abrogated except by the Supreme Court or this Court sitting *en banc*, the Secretary is wrong. *See Woodard*, 938 F.2d at 1258 n.4.

decision can hold nothing beyond the facts of that case." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (alteration adopted) (quotation omitted). In *Castro* we did not deal with conflict between ATSA and subsequently enacted legislation. Any statement in *Castro* about the superiority of ATSA's "notwithstanding" clause over subsequent legislation was dicta because *Castro* only concerned the effect of a single "notwithstanding" clause on an earlier statute that did not contain a "notwithstanding" clause. Accordingly, we did not adopt a hard and fast rule that any statute with a "notwithstanding" clause prevails over any subsequently enacted statute.[16] Thus, the fact that the earlier ATSA contains a "notwithstanding" clause does not affect our analysis of whether the later WPEA abrogated our earlier holding that TSO screeners were exempt from the Rehabilitation Act.

Next, the Secretary argues that the district court correctly determined that *Castro* was not abrogated by the WPEA because we relied on *Castro* in a case analyzing the Rehabilitation Act that was issued after the WPEA was signed into law. Specifically, the

---

[16] In fact, courts cannot tie the hands of Congress in such a manner. *See Dorsey v. United States*, 567 U.S. 260, 274 (2012) ("[S]tatutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified. And Congress remains free to express any such intention either expressly or by implication as it chooses." (citation omitted)).

Secretary points to *Center v. Secretary, Department of Homeland Security*, 895 F.3d 1295, 1302 (11th Cir. 2018).

*Center* involved a Customs and Border Protection agent's disability discrimination suit under the Rehabilitation Act. *Id.* at 1297. On appeal, the government argued that we could affirm the district court's disposal of the case on the ground that a different statute—the Compensation Act—"barr[ed] judicial review of remedies for work-related injuries." *Id.* at 1299. We disagreed, holding that there was no "conflict" between the Compensation Act and the Rehabilitation Act. *Id.* at 1302. We agreed with the government's general proposition that "Congress [could] exempt agencies from compliance with the Rehabilitation Act when it creates workplace laws that explicitly conflict with and supersede the requirements of the Rehabilitation Act," and we gave *Castro* and ATSA as an example. *Id.* at 1302–03. "In contrast," we said, "the Compensation Act offers no exception to the requirements of the Rehabilitation Act." *Id.* at 1303. In reaching this conclusion, however, *Center* did not address the effect of the WPEA on ATSA's preclusion of the Rehabilitation Act or on *Castro*'s present viability. Thus, *Center* was not about the WPEA. And in *Center*, we never held, said, or even implied that the WPEA does not allow TSOs to sue under the Rehabilitation Act. Instead, we merely contrasted ATSA with another statute and pointed to *Castro* and ATSA as an example of Congress providing an explicit carveout from Rehabilitation Act protections for a specific group of federal employees. *Id.* at 1302–03. Because we only referenced ATSA and TSOs for illustrative purposes, *Center*'s reference to *Castro* is dicta

23-11411                Opinion of the Court                17

and does not bind us on the effect of the WPEA on ATSA. *See United States v. Birge*, 830 F.3d 1229, 1232 (11th Cir. 2016) (explaining that the prior-panel-precedent rule "applies only to holdings, not dicta").

Third, the Secretary suggests that we must prefer a construction that allows both statutes to be effective. *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 304 (2003) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (internal quotation marks omitted)). To that end, the Secretary argues that both ATSA's bar on TSOs bringing Rehabilitation Act claims and the WPEA's apparent reinstatement of certain Rehabilitation Act rights are "are capable of co-existence." The Secretary proposes that we may harmonize the two statutes by reading the WPEA to restore certain remedial rights under the Rehabilitation Act that may only be vindicated in an administrative proceeding and (if necessary) through judicial review in the Federal Circuit. But the WPEA's language is not capable of co-existence with the ATSA's bar on Rehabilitation Act claims by TSOs. As we noted above, a plain reading of both statutes shows that they irreconcilably conflict. And where statutes irreconcilably conflict, we read the latter as repealing the former. *See Branch v. Smith*, 538 U.S. 254, 273 (2003). Thus, we reject the Secretary's contention that we may read the statutes harmoniously.

Finally, the Secretary claims that every circuit to consider whether the WPEA repealed ATSA's bar on TSOs bringing claims pursuant to the Rehabilitation Act has agreed with its reading, along with many district courts. But the Secretary overstates the holdings of those cases, which shed no light on the issue we confront today. Some of these cases are irrelevant because they were decided before the WPEA was enacted in November of 2012. *See, e.g.*, *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011); *Field*, 663 F.3d at 512; *Conyers v. Rossides*, 558 F.3d 137, 145 (2d Cir. 2009). Another post-dates the WPEA's enactment but does not consider or mention the WPEA whatsoever. *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 330 (5th Cir. 2021) (addressing the conflict between the Rehabilitation Act and ATSA without considering the influence of the WPEA).

Only one of the cited cases, plus another decided after oral argument in this case, have acknowledged the WPEA's effect on ATSA expressly. The first case declined to grapple with that question because "this issue was not raised in the district court." *Galaza v. Mayorkas*, 61 F.4th 669, 673 (9th Cir. 2023). The second case, which the parties discussed in submissions after oral argument, also chose not to answer the question by dismissing the case on the merits without addressing the conflict between ATSA and the WPEA. *Serrano-Colon v. United States Dep't of Homeland Sec.*, 121 F.4th 259, 274–77 (1st Cir. 2024). Accordingly, these cases are not persuasive.

## IV.    Conclusion

In sum, the WPEA abrogated our holding in *Castro*, and the district court erred by dismissing Simone's complaint pursuant to that holding.    Because the district court did not reach the Secretary's argument that Simone failed to exhaust administrative remedies before filing suit, we do not consider it in the first instance.    Accordingly, we vacate and remand to the district court for consideration of whether Simone has satisfied the administrative requirements to bring his claims in federal district court.

**VACATED AND REMANDED.**